*Ex parte* ULRICH.

(*Circuit Court, W. D. Missouri, W. D.* September 30, 1890.)

1. HABEAS CORPUS—JURISDICTION OF FEDERAL COURTS.

The district court of the United States has no jurisdiction by writ of *habeas corpus* to declare a judgment of a state criminal court a nullity, and discharge the petitioner from imprisonment imposed by it, where such court had plenary jurisdiction over the person, the place, the offense, and the cause, and everything connected with it.

2. SAME—REMEDY BY APPEAL.

In such a case, it is the right and duty of the state courts to decide questions arising under the constitution and laws of the United States, and, if it errs in its rulings to the prejudice of the defendant, his remedy is by appeal to the supreme court of the state; and, if that court denies him any right, privilege, or immunity which he claims under the constitution of the United States, he can have his writ of error to the supreme court of the United States.

*Habeas Corpus.* On appeal from the district court. For former report, see 42 Fed. Rep. 587.

On the 13th day of June, 1890, there was presented to the district court of this district the petition of Oscar Ulrich, praying for a writ of *habeas corpus.* The petitioner alleged, in substance, that at the January term, 1890, of the criminal court of Jackson county, Mo., the petitioner was indicted by the grand jury for the crime of bigamy. That his trial on said indictment for said alleged offense was set down for the 21st of April, 1890, on which day the cause was called for trial and a jury duly impaneled and sworn and the trial proceeded with, by the examination of witnesses for the state, until noon of the following day, when the judge of the court, without the consent of the defendant, adjourned the cause until 9:30 o'clock the next morning, and caused the petitioner to be committed to jail for safe-keeping. That after the noon adjournment of the petitioner's case on the 22d, the judge of the court before whom the petitioner was being tried permitted a special judge, who had been previously appointed to try another criminal case pending in the court, to impanel another jury, and proceed with the trial of said second cause, and to continue the trial thereof from day to day until the evening of the 25th of April, when it was concluded. On the morning of the 23d of April, the prosecuting attorney announced that the jury and witnesses in the petitioner's case would be excused until 2 o'clock P. M. of that day, at which hour the regular judge came upon the bench, and announced that the jury and witnesses in the case would be dismissed until the next day at 1:30 P. M. That the next day the judge did not appear until 3:30 P. M., and that he then announced the petitioner's case would not be called until 1:30. P. M. the following day. That at 2:30 o'clock P. M. the following day the judge announced that the case would not be called until the next morning at 10 o'clock. That the next morning, which was Saturday, April 26th, the judge came on the bench, and announced he was feeling ill and not able to go on with the court, and thereupon discharged the jury impaneled to try the petitioner, and set the case down for trial the 26th of May, 1890. That the several adjournments of his trial from the 22d to the 26th of April were made and ordered in his absence, and without his knowledge or consent, and against the protest of his counsel, and that the jury were discharged against his protest. That on the 26th day of May, the day to which his case had been adjourned, it was again called for trial, whereupon the "petitioner filed his motion for a discharge and a plea in bar of all further proceedings, based upon and by reason of the facts hereinbefore set out," which motion and plea the judge overruled, and, against the petitioner's protests and objections, ordered another jury to be impaneled, and again placed the petitioner on trial for said alleged offense, and, as a result thereof, the petitioner was convicted, a new trial denied him, and he was sentenced to two years' imprisonment in the penitentiary. The petitioner thereupon presented to the district court his petition for a writ of *habeas corpus,* alleging his imprisonment was in violation of the fifth and fourteenth amendments to the constitution of the United States, and praying to be discharged therefrom for that rea-

son. The marshal of Jackson county, who had the petitioner in his custody, and upon whom the writ of *habeas corpus* was served, made return to the writ, showing that the petitioner had been regularly indicted by the grand jury of the criminal court for Jackson county for the crime of bigamy committed in said county, and that he had been duly tried on said indictment for said offense, and found guilty by the verdict of the jury, and sentenced for said offense by the court to two years' imprisonment in the penitentiary of the state of Missouri, and that the respondent had the defendant in his custody to convey him to the penitentiary in execution of that sentence. Upon hearing the case, the district court discharged the petitioner, from which judgment the respondent appealed to this court. The opinion of the district court discharging the petitioner is reported, (*Ex parte Ulrich,*) 42 Fed. Rep. 587.

*A. R. Strother,* for the State.

*Crittenden, Stiles & Gilkeson,* for appellee.

CALDWELL, J. Assuming the truth of the allegations in the petition, the first question to be determined is whether the district court had jurisdiction, by a writ of *habeas corpus,* to declare the judgment of the state court a nullity, and discharge the petitioner from the imprisonment imposed by it. The district courts of the United States do not possess any supervisory or appellate jurisdiction over the criminal courts of a state. Nor can the writ of *habeas corpus* be made to perform the office of a writ of error or appeal. Errors in law, however numerous and gross, committed by the trial court in a cause within its jurisdiction, can only be reviewed by appeal or writ of error in the court exercising supervisory or appellate jurisdiction over the trial court in the particular case. It is only where the trial court is without jurisdiction of the person or the cause, and a party is subjected to illegal imprisonment in consequence, that the writ of *habeas corpus* may be invoked, and the party discharged from the illegal imprisonment. *Ex parte Watkins,* 3 Pet. 193, 7 Pet. 568; *Ex parte Lange,* 18 Wall. 163; *Ex parte Parks,* 93 U. S. 18; *Ex parte Siebold,* 100 U. S. 371; *Ex parte Curtis,* 106 U. S. 371, 1 Sup. Ct. Rep. 381; *Ex parte Carll,* 106 U. S. 521, 1 Sup. Ct. Rep. 535; *Ex parte Yarbrough,* 110 U. S. 651, 4 Sup. Ct. Rep. 152; *Ex parte Crouch,* 112 U. S. 178, 5 Sup. Ct. Rep. 96; *Ex parte Bigelow,* 113 U. S. 328, 5 Sup. Ct. Rep. 542; *Ex parte Wilson,* 114 U. S. 417, 5 Sup. Ct. Rep. 935; *Ex parte Harding,* 120 U. S. 782, 7 Sup. Ct. Rep. 780; *In re Lane,* 135 U. S. 443, 10 Sup. Ct. Rep. 760; *In re Wight,* 134 U. S. 136, 10 Sup. Ct. Rep. 487; *Hans Nielsen,* 131 U. S. 176, 9 Sup. Ct. Rep. 672; *In re Coy,* 127 U. S. 731, page 756, 8 Sup. Ct. Rep. 1263.

In the case at bar, the criminal court of Jackson county had plenary jurisdiction of the person, the place, the offense, and the cause, and everything connected with it. The petitioner was indicted for violating a criminal statute of the state. The statute defining and punishing the offense was a valid law. The indictment sufficiently charged the offense,

and the court trying the petitioner had jurisdiction of his person, and exclusive original jurisdiction to try him on the indictment for the offense therein charged. Having such plenary jurisdiction, it was. the right and duty of the state court to decide every question that arose in the case, from the beginning to the end of it. Possessed of unquestioned jurisdiction of the case, the court had the same jurisdiction and right to decide questions arising under the constitution and laws of the United States that it had to decide questions arising under the constitution and laws of the state. The state court is under the same high obligations to support, construe, and give effect to the constitution of the United States that this court is, and an erroneous interpretation of the constitution of the United States no more affects the jurisdiction of the court than an erroneous ruling on any other question of law arising in the case. Whether the first jury was discharged without sufficient legal excuse was a mixed question of law and fact, to be determined by the court, or by the court and a jury, if the facts were disputed. It is undeniable that the court had jurisdiction to determine that issue. It was the only court that had jurisdiction to determine it in the first instance; and, if it be conceded that the court decided the question erroneously, its jurisdiction over the cause was not thereby lost or in any degree impaired, and its judgment was not void, and is not open to collateral attack. If the state court erred in its rulings on this or any other question, to the prejudice of the petitioner, he has his remedy to correct the error. He can appeal to the supreme court of the state, and, if that court denies him any right, privilege, or immunity which he claims under the constitution of the United States, he can have his writ of error to the supreme court of the United States. This is the regular legal and orderly mode of reviewing and revising the judgments of courts in criminal, as well as in civil, cases. The cases in which a United States court has jurisdiction, by a writ of *habeas corpus*, to discharge a party imprisoned under the process or judgment of a state court rest on special grounds, which have no existence in this case. Among the cases in which such jurisdiction is exercised are cases where the state court is proceeding against an officer of the United States, for an act done in pursuance of his official duty, under the constitution of the United States or an act of congress, (*In re Neagle*, 135 U. S. 1, 10 Sup. Ct. Rep. 658, and 39 Fed. Rep. 833;) and cases where the state court, assuming to act by authority of a state statute which is in conflict with the constitution of the United States, and void for that reason, imprisons a citizen for exercising a right guarantied to him by the constitution of the United States, (*In re Barber*, 39 Fed. Rep. 641, and 136 U. S. 313, 10 Sup. Ct. Rep. 862; *Ex parte Kieffer*, 40 Fed. Rep. 399; *In re Beine*, 42 Fed. Rep. 545.) But any extended or critical analysis and classification of the cases in which this jurisdiction exists is rendered unnecessary, in this case, by the decision of the supreme court of the United States in *Ex parte Bigelow*, 113 U. S. 328, 5 Sup. Ct. Rep. 542. In principle that case is on all fours with the petitioner's, and is decisive of it. The essential point is the same in both

cases. In that case, as in this, a jury was impaneled and sworn to try the prisoner, and the jury was afterwards discharged by the court, against the prisoner's protest, before the cause was tried and submitted to them. The prisoner, against his protest, was again put upon his trial and convicted, and sentenced to imprisonment for five years. He thereupon made an application to the supreme court for a writ of *habeas corpus* to release him from that imprisonment, on the ground that he had been twice put in jeopardy for the same offense, in violation of the fifth amendment to the constitution of the United States. That amendment applied to his case, because he was tried in a federal court of the District of Columbia; but it has no application to the petitioner's case. The supreme court refused to grant the writ. Mr. Justice MILLER, who delivered the unanimous opinion of the court, said:

"But that court had jurisdiction of the offense described in the indictment on which the prisoner was tried. It had jurisdiction of the prisoner, who was properly brought before the court. It had jurisdiction to hear the charge and the evidence against the prisoner. It had jurisdiction to hear and to decide upon the defenses offered by him. The matter now presented was one of those defenses. Whether it was a sufficient defense was a matter of law on which that court must pass, so far as it was purely a question of law, and on which the jury, under the instructions of the court, must pass, if we can suppose any of the facts were such as required submission to the jury. If the question had been one of former acquittal,—a much stronger case than this,— the court would have had jurisdiction to decide upon the record whether there had been a former acquittal for the same offense; and, if the identity of the offense were in dispute, it might be necessary on such a plea to submit that question to the jury on the issue raised by the plea. The same principle would apply to a plea of a former conviction. Clearly, in these cases, the court not only had jurisdiction to try and decide the question raised, but it is its imperative duty to do so. If the court makes a mistake on such trial, it is error which may be corrected by the usual modes of correcting such errors; but that the court had jurisdiction to decide upon the matter raised by the plea, both as matter of law and of fact, cannot be doubted. This article 5 of the amendments, and articles 6 and 7, contain other provisions concerning trials in the courts of the United States, designed as safeguards to the rights of parties. Do all of these go to the jurisdiction of the courts? And are all judgments void where they have been disregarded in the progress of the trial? Is a judgment of conviction void when a deposition has been read against a person on trial for crime because he was not confronted with the witness, or because the indictment did not inform him with sufficient clearness of the nature and cause of the accusation?"

To the same effect is *Ex parte Harding*, 120 U. S. 782, 7 Sup. Ct. Rep. 780, where it is held that the fact that an alien sat on the grand jury that found the indictment, and that the petitioner was denied his right to have compulsory process for obtaining witnesses in his favor, did not render the judgment void, and did not, therefore, give the court authority or jurisdiction to discharge the petitioner on a writ of *habeas corpus*. The criminal court of Jackson county having plenary jurisdiction of the petitioner's case, neither the district court nor this court has any jurisdiction to inquire into the regularity of the proceedings in that court.

Upon that subject, as well as the question whether the fourteenth amendment is to be construed as a prohibition on the states and the state courts from placing a person on trial twice for the same offense,[1] the court expresses no opinion.

The judgment of the district court is reversed, and the petitioner is remanded to the custody of the state authorities, in execution of the sentence of the state court. There is nothing in the record to show what order, if any, the district court made under section 3 of rule 34 of the supreme court, regulating appeals in *habeas corpus* cases; but there seems to be no reason to apprehend that the petitioner will not be forthcoming to answer the judgment of the state court.

---

[1]NOTE. It has been held in England, upon great consideration, by the unanimous judgment of all the judges, affirmed on error in the exchequer chamber, that at common law a court may, in its discretion, discharge a jury in a criminal case before verdict, and that that discretion is not reviewable on error; and that a defendant cannot avail himself of an abuse of this discretion to defeat a conviction on a second trial. Winsor v. Queen, L. R. 1 Q. B. 289, 390. Upon the question of the construction of the fourteenth amendment on the point suggested, but not decided, in the principal case, see Hurtado v. California, 110 U. S. 516, 4 Sup. Ct. Rep. 111, and particularly what is said on pages 534 and 535. And in Re Kemmler, 136 U. S. 448, 10 Sup. Ct. Rep. 930, where the views of Mr. Justice MATTHEWS, expressed on pages 534 and 535 of Hurtado's Case, are reaffirmed by Chief Justice FULLER. And see Strauder v. West Virginia, 100 U. S. 303.