## HOVEY v. SHEFFNER, SHERIFF.

HABEAS CORPUS—FUNCTIONS OF WRIT—SUPREME COURT—JURISDICTION—JURY—DISAGREEMENT—DISCHARGE—DISCHARGE ON SUNDAY—EFFECT OF IMPROPER DISCHARGE—FORMER JEOPARDY AS GROUND FOR HABEAS CORPUS.

1. A writ of habeas corpus does not possess the functions of a writ of error or other proceeding for the review and correction of errors.

2. In a habeas corpus proceeding by a prisoner pending a prosecution for a criminal offense, the court is not concerned with mere errors of law not affecting the jurisdiction of the committing court to make the order under which the petitioner is held.

3. On a habeas corpus proceeding brought by a prisoner committed for a second trial after an alleged void discharge of the jury at the former trial without a verdict, it is not material whether the discharge of the jury was a void act or not, unless it divested the court of jurisdiction to proceed further in the cause.

4. The strictly appellate or revisory jurisdiction of the supreme court is not invoked through the institution therein of an original proceeding by a petition for habeas corpus, whether the writ be allowed by the court, or a justice thereof, and made returnable before the court.

5. The occurrence of mere errors or irregularities in a criminal case not affecting the trial court's jurisdiction will not authorize a discharge of the accused on habeas corpus.

6. The jurisdictional facts cognizable on habeas corpus are not alone those which relate to jurisdiction of the subject matter, and of the person, but as well to jurisdiction to render the particular judgment.

7. Under the general rule, as well as the provisions of the constitution and statute, a trial court may, without prejudicing a further prosecution, discharge a jury in a criminal case, where it appears that, after a reasonable time for deliberation has been allowed, a verdict has not been agreed upon, and there is no probability of an agreement.

8. The legal effect of an erroneous discharge of the jury in a criminal case without a verdict is neither greater nor less where the act is erroneous because void than where it is erroneous for any other reason.

9. Whatever the particular imperfection in the discharge without a verdict of a duly sworn jury in a criminal ·case, its only effect in favor of the accused is to operate as a verdict of acquittal, thereby placing the accused within the protecting clause of the constitution against a second jeopardy.

10. As a general rule the defense of former jeopardy or former acquittal or conviction does not entitle the prisoner to be discharged on habeas corpus.

11. Though an improper discharge of the jury after jeopardy begun may operate in law as an acquittal, habeas corpus will not lie on that ground for the prisoner's discharge.

12. The district court is not divested of further jurisdiction in a criminal case, or of jurisdiction to commit the accused to await another trial, so as to authorize the prisoner's release upon habeas corpus, by a discharge of the jury for disagreement on Sunday, though the act in so discharging the jury be void because occurring on a non-judicial day,

thereby giving to the accused the defense of former jeopardy or acquittal to a further prosecution.

[Decided January 20, 1908.]                    (93 Pac., 305.)

ORIGINAL proceeding on habeas corpus.

The facts are stated in the opinion.

*Fred D. Hammond,* for the plaintiff.

At common law Sunday was *dies non juridicus.* (20 Ency. Pl. & Pr., 1190, and cases cited.) The adoption of the common law by statute (R. S. 1899, Sec. 2695) specifically excluded the common law and statutes of England, after July 4, 1776, that day being the point of time at which the continuous stream of the common law became divided, and that portion which had been adopted in America flowed on by itself, no longer subject to changes in England. (Johnson v. Coal Co. (Utah), 76 Pac., 1089.) At common law courts could not perform judicial acts on Sunday, and in those states where that law prevails unrepealed by statute, the judicial acts of a court performed on Sunday are void. (Welden v. Colquist, 62 Ga., 449; Chapman v. State, 5 Blackf., 111; Taylor v. Renger, 3 Wash. Ter., 539.) Although ministerial acts on Sunday are held valid. (Hadley v. Musselman, 104 Ind., 459; Carey v. Silcox, 5 Ind., 370; Kiger v. Coats, 18 Ind., 153.)

The convening of court on Sunday and the discharge of a jury in a criminal case, because they cannot agree, is void and operates as an acquittal of the defendant. (*Ex parte* Tice, 32 Ore., 179 (49 Pac., 1038); State v. McGimcey, 80 N. C., 377 (30 Am., 90.) The discharge of a jury because of a failure to agree is a judicial act. (R. R. Co. v. U. S., 99 U. S., 700; Smith v. Strouther, 68 Cal., 194; *In re* Cooper, 22 N. Y., 67; 4 Words & Phrases, 3848.) R. S. Wyoming, 1899, Sec. 3612, providing that courts shall be always open, can, by no line of reasoning, be held to make a judicial day of Sunday, the evident intention of

the legislature being to empower courts to do official business during vacations of the court, but upon legal days. Statutes in derogation of the common law should be strictly construed. (Brown v. Barry, 3 U. S., 365.) It will be presumed that the legislature in enacting a statute did not intend to make any alteration in the common law, other than that specifically stated. (Cadwaller v. Harris, 76 Ill., 370; Hooper v. Baltimore, 12 Md., 464.) When the common law and statute differ, the common law gives way, but only when the statute is couched in negative terms, or where its matter is clearly so repugnant that it implies a negative. (State v. Norton, 23 N. J. L., 33.) The Christian religion is part of the common law. (Bloom v. Richards, 2 O. St., 387; Anderson v. N. Y., 6 N. Y. Sup., 156.) And courts should never impute to the legislature a purpose of action against religion. (Holy Trinity Church v. U. S., 143 U. S., 457.) Where a jury duly sworn is discharged without the prisoner's consent, before verdict, he is exonerated from further answering the indictment unless the record shows some legal necessity for such discharge. (Hines v. State, 24 O. St., 134; Allen v. State (Fla.), 41 So., 593; Adams v. State, 99 Ind., 244; Tomasson v. State (Tenn.), 79 S. W., 802; Obrien v. Com., 72 Ky., 333; State v. Costello (Wash.), 69 Pac., 1099.)

*W. E. Mullen,* Attorney General, for defendant.

It may be admitted that at common law Sunday was *dies non juridicus.* The principle, which was a part of the common law of England adopted by the colonies, is traceable to certain canons of the church. It seems, however, that prior to the fifth century the Christian courts were open to litigants and judicial business was transacted on Sunday. (Parsons v. Lindsay, 3 L. R. A., 658, and note; Hansworth v. Sullivan, 6 Mont., 203.) While the common law is expressly adopted as the rule of decision in this state the statute is qualified in terms and does not seem to require an express statutory repeal of common law prin-

(9)

ciples. If inapplicable or inconsistent with state laws, the common law rule does not apply. (R. S. 1899, Sec. 2695.) The question is governed by statutory provisions, however, in nearly all of the states, and the decisions of courts in disposing of the question follow the statutes of the jurisdiction where the respective cases are decided. Where the statutes are silent, the common law rule is held to prevail, and judicial acts of courts performed on Sunday are held to be void. A distinction is made, however, between what are classed as ministerial acts, and acts of judicial character. The Oregon case cited by counsel for plaintiff follows a statute which prohibits the transaction of judicial business by courts on Sunday, except to give instructions to the jury deliberating on their verdict; to receive the verdict of a jury, or to exercise the powers of a magistrate in a criminal action. The case cited in 80 N. C., 377, would not seem to support the contention of plaintiff in as much as that case is cited in a later case in the same state (Taylor v. Ervin, 119 N. C., 274), where it is held that under the statute of North Carolina, requiring a judgment to be entered at once on the verdict of a jury, there being no inhibition of a verdict rendered on Sunday, either at common law or by statute, a judgment entered on Sunday is valid. The court also holds that in special cases, *ex necessitate*, a court may sit on Sunday. (State v. Ricketts, 74 N. C., 193.) It is probable that the question here will turn upon the interpretation of Sec. 3612, R. S. Wyo., 1899, which provides that the court shall be open at all times for certain business. The proposition advanced by counsel that courts should never impute to the legislature a purpose against religion, assumes that the discharge of a jury on Sunday is in the nature of an act against religion. We do not desire to enter upon a discussion of this phase of the question, further than to state that the cases which have discussed it have, by what appears to be the better and sounder course of reasoning, established the principle that to discharge a jury which has either arrived at a verdict, or which cannot in all probability arrive

at a verdict, is vastly more consistent with sane principles of religion, than to require a jury under such circumstances to remain confined during the entire twenty-four hours of the Sabbath day.    (State v. McGimsey, *supra;* Taylor v. Ervin, *supra;* State v. Ricketts, 74 N. C., 193.)

The following cases show the conclusions in states where the common law as to Sunday has been confirmed or qualified in various particulars by statute:   People v. Warden, 76 N. Y. S., 728;   State v. Straub (Wash.), 47 Pac., 227; State v. Rover, 13 Nev., 23;   McCorkle v. State, 14 Ind., 39;  Reid v. State, 53 Ala., 402;  People v. Sato, 65 Cal., 621;  Blaney v. State, 74 Md., 157;  Green v. Canfield, 38 Neb., 169; Pearson v. Alsalfa, 44 Fed., 358.

The phrase, "at all times," in our statute requiring district courts to be open necessarily includes Sunday.  (Adams v. Dohrman, 63 Cal., 417;  Anderson v. Matthews, 8 Wyo., 307;  Jones v. Bowman, 10 Wyo., 52.)

A person is not in legal jeopardy until put upon trial before a court of competent jurisdiction, upon an information or indictment sufficient in form and substance to sustain a conviction, and a jury has been regularly charged with his deliverance. (Cooley Const., line 299, and note (6th Ed.)   The court cannot pass upon the question of former jeopardy on habeas corpus.   It is a question to be tried by a plea in bar, from the decision of which an appeal will lie. (Steiner v. Nerton, 6 Wash., 23;  *In re* Maughn, 6 Utah, 167;  *In re* Barton, id., 264;  Church on Hab. Corp., 253, and note.)   The attack on a judgment by habeas corpus being collateral, the judgment cannot be impeached for any error or irregularity not affecting the power of the court to act.   (Younger v. Helm, 12 Wyo., 289.)

POTTER, CHIEF JUSTICE.

A writ of habeas corpus was issued in this case by order of the chief justice and made returnable before the court, upon the petition of Fay Hovey alleging that she is unlawfully imprisoned and restrained of her liberty at the town

of Casper, in Natrona County, in this state, by Jesse A.
Sheffner, sheriff of said county, under an order and com-
mitment of the district court sitting in and for said county
made and entered November 21, 1907, which order, by rea-
son of certain facts set out in the petition, presently to be
stated, is alleged to be insufficient to justify the imprison-
ment complained of.   The sheriff's answer and return ad-
mits the imprisonment and restraint of plaintiff, but denies
its alleged illegality, and sets out a certified copy of the
order aforesaid as his authority in the premises.

It appears from the pleadings that on the 7th day of No-
vember, 1907, one of the regular days of the July term of
said district court, the plaintiff was placed on trial, after a
plea of not guilty, upon an information filed by the prosecut-
ing attorney of Natrona County charging her with the stat-
utory offense of enticing a female of good repute and
chastity into a house of ill fame for the purpose of prosti-
tution; that a jury was impaneled and sworn upon said
trial, to whom, after the introduction of evidence, argu-
ments of counsel, and instructions of the court, the cause
was submitted on Saturday, November 9, 1907, and they
thereupon retired to deliberate upon their verdict.   That
on the following day, Sunday, November 10, 1907, at the
hour of ten o'clock in the forenoon, the presiding judge of
said court convened the same in session, the clerk and
sheriff being present, as also the plaintiff here, who was
defendant in said cause, and the attorneys for the State;
whereupon the jury aforesaid was called into the presence
of the court, and upon inquiry by the court reported that
they were unable to agree, and that there was no proba-
bility of their agreeing or rendering a verdict, and asked to
be discharged from a further consideration of the case.
Thereupon, on said day, they were discharged by the court;
and an order was then made and entered of that date recit-
ing the report of the jury and that "it thereupon appearing
to the court that the jury cannot agree and that there is no
probability of their agreeing, and that they are unable to

agree upon a verdict, and for these reasons it is ordered that the said jury be discharged from a further consideration of the case."

It further appears that thereafter, at the same term, viz.: November 21, 1907, the following order, which constitutes the authority for the imprisonment complained of, was made and entered by said court in the cause aforesaid:

(Omitting the title and caption.)   "This cause coming on to be heard regularly on the special plea in bar heretofore filed by the defendant, Fay Hovey, and the same having been argued by counsel, and fully considered by the court, it is, this 21st day of November, 1907, by the court, ordered, adjudged and decreed, that the special plea in bar of the defendant, Fay Hovey, be and the same is hereby denied and overruled, to which denial and overruling of the court of said plea in bar, the defendant here and now excepts, and the court being unable to re-try said cause at this present (July term, A. D. 1907) term, it is by the court ordered, that the said cause be and the same is hereby continued until the next regular term of this court, the January, A. D. 1908, term, and it is further ordered, that the bond in this cause shall be and hereby is fixed at the sum of three hundred dollars ($300.00) for the appearance of said defendant, Fay Hovey, before this court on the first day of the regular January, 1908, term thereof, at 10 o'clock a. m., and there to remain and not depart without leave of court and to abide the judgment and order of the court, and it is further ordered, that the sheriff of Natrona County, Wyoming, be and he is hereby commanded to receive and safely keep the said Fay Hovey and her, the said Fay Hovey, to safely keep and imprison in the jail of said Natrona County until she, the said Fay Hovey, be discharged by due process of law, and a certified copy of this order shall be the authority of said sheriff of Natrona County.  To each and every part of this order the defendant now and here excepts.  Done in open court this 21st day of November, 1907."

Upon the ground that the discharge of the jury was unlawful and void, for the reason that it occurred on Sunday,

an alleged non-judicial day, and without the consent of
plaintiff, or a waiver by her of any of her rights, it is al-
leged that it operated as an acquittal, and that as a result of
the proceedings the plaintiff has been placed in jeopardy
for said offense.

The defendant admits, by his answer and return, the dis-
charge of the jury on Sunday, but denies that it was a non-
judicial day, and alleges that the jury was discharged because
of disagreement. He further alleges that one of the jurors,
named in the answer, was not a citizen of the United States,
a fact not known to the prosecuting attorney at the time of
the impaneling and swearing of the jury, and which could
not then have been ascertained by the exercise of ordinary
diligence, for which reason it is alleged that the jury was
not competent and was not regularly and legally impaneled
to try the cause.

Plaintiff filed a reply admitting that the juror named was
not a citizen of the United States, but alleging that such
disqualification was known to this plaintiff at the time, and
that, being satisfied with him as a juror, she accepted him
as such and considers that she thereby waived her right to
object to him. The cause has been heard by the court upon
the pleadings, and certain papers offered by the defendant
as evidence for the purpose of establishing his allegation as
to the disqualification aforesaid of one of the jurors.

We are not advised by the record in this proceeding as to
the ground or substance of the special plea in bar, which
appears to have been overruled by the order committing the
petitioner, or the time when it was filed. The strong infer-
ence, perhaps, may be that it was filed after the discharge of
the jury, and that it was based upon the ground that such
discharge was illegal and void and the proceedings, there-
fore, tantamount to a verdict of acquittal, entitling the ac-
cused to set up the defense of former jeopardy or acquittal
to a second trial upon the information or for the same
offense.

At any rate the only ground urged here for the plaintiff's
discharge upon habeas corpus is that, by reason of the pro-

ceedings upon her trial, she has been once placed in jeopardy, and that a second trial would violate the provision of the state constitution that a person shall not be twice put in jeopardy for the same offense. (Const., Art. I, Sec. 11.) It is urged that at common law Sunday is *dies non juridicus,* and, though there is no local statute expressly prohibiting the sitting of the court or the transaction of judicial business on that day, that the common law in that respect is in force in this state, since, by statute, the common law of England has been adopted so far as the same is of a general nature, and not inapplicable, nor inconsistent with the laws of the state. (Rev. Stat. 1899, Sec. 2695.) It is conceded that even at common law it is competent to receive a verdict on Sunday, but it is said to have been so declared for the sole reason that such a proceeding is merely ministerial; and it is contended that the discharge of a jury for disagreement requires a judicial determination that they have deliberated a reasonable time so as to authorize a discharge, and that there is no probability of an agreement, and, therefore, as a judicial act is illegal when performed on a nonjudicial day. With that proposition as a basis it is contended that the illegal discharge of the jury without a verdict operated as an acquittal of the plaintiff; and that since she cannot legally be again placed in jeopardy she is entitled to be discharged.

On the other hand, while it is conceded that at common law Sunday is a non-judicial day, it is argued that the purpose of the day is far better subserved by discharging a jury unable to agree instead of keeping them together throughout the day and until Monday morning, and that the act may well be regarded as a necessity and upheld on that ground. It is further contended that the district courts are authorized to sit on Sunday, and to discharge a jury on that day for disagreement, by virtue of the statute of 1895 (Rev. Stat. 1899, Sec. 3612), which provides that, in addition to the regular terms fixed by law, "each district court shall be open *at all times* for the transaction of business in the entry of judg-

ments, decrees, orders of course, and such other orders as have been made or granted by the district court, or any judge thereof, and for the hearing and determination of all matters brought before the court or judge, except the trial of issues of fact."

Counsel for plaintiff insists that the expression "at all times" in said statute has reference only to days in vacation or recess upon which a court may lawfully sit and transact judicial business, and does not necessarily include Sunday or other non-judicial days. It is argued that a clear and unequivocal statute to the contrary is required to overthrow the common law principle prohibiting the transaction of judicial business on Sunday; and that the statute aforesaid is reasonably capable of a construction not interfering with that principle.

The question thus sought to be presented is an important one. If the propositions relied on by plaintiff are sound, and should be disregarded by the district court, and the plaintiff compelled against her objection to undergo another trial, notwithstanding that she has been once in jeopardy for the same offense or that in legal effect the result of the former trial was equivalent to an acquittal, an error will be committed. And if, as we suppose, the overruled plea in bar set up the facts here alleged, the order denying it and committing the plaintiff may have been erroneous. The question here upon habeas corpus, however, is not whether error has been or may be committed by the district court, but whether, in committing the plaintiff to the custody of the sheriff to await another trial, the court has exceeded its jurisdiction. In this proceeding we are not concerned with mere errors of law not affecting the jurisdiction of the court to make the order under which the plaintiff is held, nor is it material here whether the discharge of the jury was a void act or not, unless, if held to have been illegal, it divested the court of jurisdiction to proceed further in the cause. And upon this point it is contended on behalf of defendant that the court retained jurisdiction, and that habeas corpus

is not the appropriate remedy for the determination of the question of former jeopardy.

That the writ of habeas corpus is not endowed with the functions of a writ or error or other proceeding for the review and correction of errors is an elementary rule, and has many times been asserted by this court.   (Kingen v. Kelly, 3 Wyo., 566; *In re* McDonald, 4 Wyo., 150; Miskimmins v. Shaver, 8 Wyo., 408; Fisher v. McDaniel, 9 Wyo., 457; Bandy v. Hehn, 12 Wyo., 289; Hollibaugh & Bunten v. Hehn, 13 Wyo., 269.)   Hence, authority to issue the writ and determine the legality of a particular imprisonment thereon is frequently, if not usually, conferred equally upon courts of different grades and the judges thereof, without regard to the appellate jurisdiction of such courts.   In this state the power is vested concurrently in the district and supreme courts and the judges thereof; and the right to entertain an application for the writ is not made to depend upon appellate or revisory authority over the judgment, order or process by which the applicant may be restrained.   The writ brings up the body of the prisoner, and the cause of his commitment, but not the record of the judicial proceeding, if any, wherein the commitment has occurred.   The strictly appellate or revisory jurisdiction of this court is not invoked, therefore, through the institution of an original proceeding by a petition for habeas corpus, whether the writ be ordered issued by the court or by a justice thereof and made returnable before the court.

Neither is the writ of habeas corpus designed to interrupt the orderly administration of the criminal laws by a competent court while acting within its jurisdiction.   The occurrence of mere errors or irregularities in a criminal case, not affecting the jurisdiction of the trial court, will not authorize a discharge of the accused upon habeas corpus. Jurisdictional facts only are to be considered upon this writ, whenever the restraint complained of appears to be under legal process or judicial order.   A void process or a void judgment or order of a committing court is ground for the

discharge of one held upon it in this summary and collateral proceeding, not because of error merely, but for the reason that the court has acted without jurisdiction, or, having had jurisdiction, has either lost or exceeded it.

Our statute proceeds upon this principle in the provision that "it is not permissible to question the correctness of the action of a grand jury in finding a bill of indictment, or a petit jury in the trial of a cause, nor of a court or judge when acting within their legitimate province, and in a lawful manner." (Rev. Stat. 1899, Sec. 5498.) In the case of *In re* McDonald, *supra,* Chief Justice Groesbeck, speaking for this court, said, in referring to that statute in connection with the facts of the case, that "the court had acted within its legitimate province, for it had jurisdiction of the offense and of the person of the offender"; and a decision of the Iowa supreme court construing the words "in a lawful manner" in a similar statute was quoted from with approval. In effect the decision thus approved held that "manner" had reference to the method of acting more than to the degree of perfection or correctness in the results arrived at, so that if a court observes proper methods or means it may be said to be acting in a lawful manner, although it may err in the application of legal principles to such an extent as to involve reversible error. But it was explained that a court would not be regarded as having acted in a lawful manner when the judgment pronounced is absolutely void, since such a judgment would have no support in law. (Elsner v. Shirgley, 45 N. W., 393.)

This court has adopted the liberal view sustained by the later authorities that the jurisdictional facts cognizable on habeas corpus are not alone those which relate to jurisdiction of the subject matter, and of the person, but as well to jurisdiction to render the particular judgment. (Kingen v. Kelley, *supra;* Miskimmins v. Shaver, *supra;* Bandy v. Hehn, *supra.*) In Kingen v. Kelley, it was said: "Lack of jurisdiction of the subject matter, jurisdiction of the person, or jurisdiction to render the particular judgment as-

sailed, seems to include all cases which render a judgment void or subject to collateral attack in habeas corpus." In the Miskimmins case the applicant was discharged on the ground that the act for which he had been committed as for a contempt by a magistrate holding a preliminary examination did not constitute a contempt in law, and that, therefore, the magistrate had been without jurisdiction to render the particular judgment. The applicant had been committed for a refusal to answer certain questions propounded to him as a witness, the expressed ground of his refusal having been that his answers would tend to criminate him. In Bandy's case a sentence to the penitentiary as for grand larceny upon an accepted plea of guilty of petit larceny to an information charging grand larceny was held to have been in excess of jurisdiction, and the applicant was discharged. The sentence appeared to have been based upon the fact that the records of the trial court disclosed a previous conviction of the accused of petit larceny, and, without a charge having been preferred of a second offense, or a plea of guilty thereto or a regular conviction thereof, the court, upon the bare record of such previous conviction, attempted to apply the statute authorizing the punishment prescribed for grand larceny upon a second conviction of petit larceny. There jurisdiction was found wanting to render the particular judgment. In the other cases above cited previously decided by this court questions were considered connected with the procedure of courts; and the acts complained of held, if objectionable at all, to have been mere errors or irregularities, and not void as without jurisdiction, though some of the acts were objected to on constitutional grounds. Those cases serve to illustrate the principle now under discussion, but none of them involved a state of facts similar to that presented in this case.

We are, therefore, to inquire into the legal consequences of the wrongful or illegal discharge without verdict of a trial jury impaneled and sworn in a criminal case, to ascertain whether or not the act presents a jurisdictional question,

such as would entitle the accused to discharge from further imprisonment upon habeas corpus, in the event that the proceeding in relation to the jury should be held to have been erroneous either because improper under the circumstances, or void as beyond the lawful powers of the court upon the day of its occurrence.

At this day it is unnecessary to cite authority to sustain the right of a trial court, without prejudicing a future prosecution, to discharge a jury in a criminal case, where it appears that after a reasonable time for deliberation has been allowed a verdict has not been agreed upon, and there is no probability of an agreement. In accordance with the general rule upon that subject, now well established on the ground of necessity, the constitution of this state, in the section containing the provision against a second jeopardy, provides that, "if the jury disagree, * * * the accused shall not be deemed to have been in jeopardy." The statute, moreover, provides that whenever a jury shall be discharged after they have been kept so long together that there is no probability of agreeing, the court shall, upon directing the discharge, order the reasons therefor to be entered on the journal; and such discharge shall be without prejudice to the prosecution. (Rev. Stat. 1899, Sec. 5386.)

It may be conceded that the improper discharge of a jury in a criminal trial after the commencement of jeopardy will render the proceedings equivalent to a verdict of acquittal, so far as such a verdict will constitute a good defense in bar of a subsequent trial for the same offense, either upon the same or another indictment or information, and perhaps also entitle the accused to a judgment of acquittal and discharge upon the same information upon motion in the trial court. When a criminal trial has reached the stage where jeopardy has commenced, and the jury is discharged without the consent of the defendant on trial, without some recognized necessity, or reason authorized by law, it may well be held, as it generally is, since the right of the accused to a verdict at the hands of the jury has been rendered impossible

without fault on his part, through the erroneous act of the court, that he may demand that the result be regarded as an acquittal, and he will be protected by the rule forbidding a second jeopardy. And, manifestly, the same situation arises upon a discharge of the jury, though for a lawful cause, at a time or on a day when the court is without power to sit or make an order discharging them.

It does not follow, however, that the erroneous or void discharge of the jury, and the advantage thereby afforded to the accused, will deprive the court of further jurisdiction in the case, or upon another information or indictment for the same offense. It is true that the facts may furnish the accused with a good defense on the ground of former jeopardy; but whether they amount to a sufficient defense or not, either as a matter of law or fact, is to be determined in the manner provided by law, the same as any other defense. The fact that the defense is based upon an immunity granted by the constitution offers no valid objection to the court's jurisdiction to hear it, and determine upon its sufficiency; nor is the opportunity offered to pass upon the matter incorrectly a ground for denying jurisdiction.

The constitution gives an accused the right to demand the nature and cause of the accusation against him, to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses; yet, it is apparent that neither the chance that the court wherein the prosecution is pending may commit error in respect to any of those matters, or an actual erroneous ruling thereon, will usually affect the jurisdiction of the court. One of the most frequent objections in a criminal prosecution is the alleged insufficiency of the indictment or information to apprise the accused of the nature and cause of the accusation; it is not, however, generally supposed that an adverse decision upon such an objection, though erroneous, takes away further jurisdiction, unless, indeed, the act sought to be punished constitutes no crime or offense under the law. In *Ex parte* Harding, 120 U. S., 782, it was

held that a denial of the right to have compulsory process for witnesses was not a jurisdictional objection; and this is in harmony with the general run of decisions on that question. (See also *In re* McKnight, 52 Fed., 799.)

The statute clearly contemplates that the trial court has jurisdiction to entertain and determine the plea of former jeopardy. It prescribes that upon arraignment the accused may offer a plea in bar that he has before had judgment of acquittal, or been convicted or been pardoned for the same offense, to which plea the prosecutor may reply that there is no record of such acquittal or conviction, or that there has been no pardon; and a trial of such issue to a jury, if necessary, is provided for. (Rev. Stat. 1899, Sec. 5331.)

In this case there has been no judgment of acquittal, and in such case, where the further proceedings are had upon the same information that was before the discharged jury, as well generally where the accused is held to answer upon a second trial to the same information, a formal plea in bar may, perhaps, be unnecessary, though the usual practice we think is even then for the accused to ask and be granted a right to withdraw his previous plea of not guilty and substitute the plea in bar, setting up the facts deemed to constitute former jeopardy. There is, however, authority denying the necessity of the formal plea after a disposition of one trial upon the same information or indictment under circumstances that place the accused once in jeopardy. (People v. Taylor, 117 Mich., 583; State v. White (Kan.), 80 Pac., 589.) It is so held in the cases cited upon the ground that the proceedings relied on as constituting the former jeopardy are before the court upon its own record in the case; and that upon the question being raised, the court will take cognizance of the facts so disclosed and determine their proper legal effect.

The legal effect of an erroneous discharge of the jury without a verdict is neither greater nor less where the act is erroneous because void, than where it is erroneous for any other reason, as, for example, where it occurs in the en-

forced absence of the defendant, or without allowing sufficient time for deliberation, or to accommodate the prosecution in obtaining absent testimony, if that be not permitted, or upon any ground not authorized by law. Whatever the particular imperfection in the proceeding, the only result is a condition protecting the accused against further prosecution upon the ground of former jeopardy. The most that can be said in any case as to the effect of an improper discharge of a duly sworn jury in a criminal case is that it is equivalent to a verdict of acquittal, thereby placing the accused within the protecting clause of the constitution when confronted with a further prosecution.

The order committing the plaintiff into the custody of the sheriff was made on a lawful day of the court, subsequent to the discharge of the jury. Was it made in excess of jurisdiction? The authorities are numerous upon the subject of the effect upon the jurisdiction of the court of an erroneous discharge of a jury in criminal cases and, with very few exceptions, the loss of jurisdiction is denied, as well as the right to have the resulting question of jeopardy determined upon habeas corpus. If the court has jurisdiction it is evident that it is not confined in its exercise to the rendering of a correct decision. As said in *Ex parte* Bigelow, 113 U. S., 328, in discussing the court's jurisdiction upon a claim of former jeopardy, after an alleged improper discharge of the jury pending a previous trial, "It had jurisdiction to hear the charge and the evidence against the prisoner. It had jurisdiction to hear and decide upon the defenses offered by him. The matter now presented was one of those defenses. Whether it was a sufficient defense was a matter of law on which the court must pass so far as it was purely a question of law, and on which the jury under the instruction of the court must pass if we can suppose any of the facts were such as required submission to the jury."

In that case several indictments against the defendant for embezzlement had been ordered by the trial court to be consolidated for the purpose of trial. A jury was thereupon

impaneled and sworn, the district attorney made a statement of his case to the jury, and the court then took a recess. Upon reconvening, the court decided that the indictments could not be well tried together, and discharged the jury from further consideration of them. The prisoner was thereafter tried against his protest before the same jury upon one of the indictments and convicted. He asked leave to file a petition for habeas corpus to obtain his discharge, upon the ground that he had been once in jeopardy with regard to all the offences charged in the several indictments. The supreme court refused the writ, basing its decision upon the proposition that the trial court had not lost its jurisdiction by the discharge of the jury, and, though error may have been committed, because of the circumstances, in permitting the prisoner to be convicted upon a second trial, it did not go to jurisdiction.

It was further said in the opinion in that case: "If the question had been one of former acquittal—a much stronger case than this—the court would have had jurisdiction to decide upon the record whether there had been a former acquittal for the same offense, and if the identity of the offense were in dispute, it might be necessary on such a plea to submit that question to the jury on the issue raised by the plea. The same principle would apply to a plea of former conviction. Clearly in these cases the court not only has jurisdiction to try and decide the question raised, but it is its imperative duty to do so. If the court makes a mistake on such trial it is error, which may be corrected by the usual modes of correcting such errors."

In *Ex parte* Ulrich, 43 Fed.; 661, it was alleged that the petitioner had been placed on trial before a state court upon an indictment charging bigamy, and that, pending the trial, after the impaneling and swearing of a jury and partial examination of witnesses, the jury was discharged against the prisoner's protest, and another trial was ordered. Thereupon a writ of habeas corpus was sued out by the prisoner in the United States district court and the

same was granted.   Upon appeal to the circuit court, the order discharging the petitioner was reversed.   Circuit Judge Caldwell, in the opinion, said:

"Whether the first jury was discharged without sufficient legal excuse was a mixed question of law and fact, to be determined by the court, or by the court and a jury, if the facts were disputed.   It is undeniable that the court had jurisdiction to determine that issue.   It was the only court that had jurisdiction to determine it in the first instance; and, if it be conceded that the court decided the question erroneously, its jurisdiction over the cause was not thereby lost or in any degree impaired, and its judgment was not void, and is not open to collateral attack."

So we find it laid down as a general rule that the defense of former jeopardy or of former acquittal or conviction does not entitle the prisoner to be discharged on habeas corpus.   (21 Cyc., 305, and cases cited; 9 Ency. Pl. & Pr., 632; Church on Hab. Corp. (2d Ed.), Sec. 253, and note; 1 Bish. New Cr. Proc., Sec. 821.)   In the section cited, Mr. Bishop states that a discharge of the jury after jeopardy begun, without verdict or the prisoner's consent, operates in law as an acquittal; and on motion, without plea, he is entitled to be set at liberty, but that should the court refuse, habeas corpus will not lie.

One of the early cases on this subject frequently cited and approved is Wright v. State, 5 Ind., 290.   There it appeared that the petitioner had been put on trial upon an indictment for murder; the trial progressed until a day deemed by the court to be the expiration of the term, and, as the court was satisfied the trial would not be completed on that day, it discharged the jury over the prisoner's objections, and remanded the latter to jail to await trial at the next term.   His discharge from custody under the order so committing him was denied on habeas corpus, although it was held that there was former jeopardy.   The court conceded the privilege of every one conceiving himself illegally detained in custody to demand the writ of habeas

corpus as a matter of right, but said that it did not follow that the court or judge before whom the cause may be brought can in all cases investigate the merits of the detention. A statute existed in Indiana to the effect that on habeas corpus the legality could not be inquired into of any judgment or process whereby the party is in custody upon a warrant issued upon an indictment or information. The court held that, as the case had not been finally disposed of, and there had not been a release of the prisoner by any judgment of the trial court, he was to be regarded as in custody under the indictment, and habeas corpus could not be employed to discharge him.

The case of Wright v. State has been followed upon this point in an unbroken line of decisions in Indiana, with the single exception of the case of Maden v. Emmons, 83 Ind., 331, and that case was expressly overruled in Gillespie v. Rump, 72 N. E., 138. The case of Maden v. Emmons was where the jury had dispersed without rendering a verdict, upon discovering after they had retired that one of their number was not a resident of the county. The case of Gillespie v. Rump, which was an appeal from a judgment refusing discharge on habeas corpus, disclosed the following facts: After a jury had been impaneled and sworn upon the trial of the petitioner under an indictment charging the crime of murder, the submission was set aside over the objection of the accused to permit the challenge by the prosecution of one of the jurors on the ground of relationship to one of the defendants; the challenge was made and allowed, and a new juror called and sworn, all over the protests of the defendants on trial. The latter thereupon moved their discharge on the ground of jeopardy, and, it being overruled, filed a special plea in bar, which was also overruled. The trial proceeded and resulted in a disagreement of the jury and the remanding of the prisoner for another trial. In that state of the case the writ of habeas corpus was sued out. The judgment refusing to discharge was affirmed for the reason that the question

sought to be raised could not be heard and determined on habeas corpus. The various Indiana cases are reviewed in an instructive opinion.

It is true that the Indiana cases rest largely upon the provision of their statute above referred to, which, perhaps, may be regarded as more strongly prohibitive of questioning the judgment of a competent court than our own statute. It is evident, nevertheless, that the theory of the Indiana cases is opposed to the loss of jurisdiction in the trial court after an irregular or wrongful discharge of the jury. Indeed, in Gillespie v. Rump, it is stated in the opinion, that the discharge of a juror and the impaneling of another in his place, even if erroneous, did not deprive the court of jurisdiction, and render the subsequent proceedings void. And it seems clear from a reading of that case that a void judgment, apparent on the record, would even under the Indiana statute be deemed ground for discharge upon habeas corpus.

*Ex parte* Maxwell, 11 Nev., 428, was a habeas corpus case before the supreme court of Nevada. The petitioner claimed to be entitled to his discharge because of the discharge of the jury upon his trial, after they had been out but three hours, upon the mere statement of the foreman that they were unable to agree, whereby the proceedings became equivalent to an acquittal. The court upheld the contention as to the unwarranted and illegal discharge of the jury and the effect thereof, but remanded the prisoner on the ground that the order holding him for another trial was not void, but voidable only. It was held that the right to claim former jeopardy might be waived.

A statute like that in Indiana did not exist in Nevada, but the statute of the latter state was said to extend the power of the court in habeas corpus beyond that at common law. Yet it was remarked that the writ was not intended to operate or to have the force of an appellate proceeding, and that the process or authority holding the prisoner must be absolutely void, and not merely voidable,

to justify a discharge upon the writ, where the detention is by virtue of legal process.

That a claim. of former jeopardy based upon an alleged improper discharge of the jury without verdict will not be determined on habeas corpus is also maintained in Missouri. The principle was announced in an early case where the discharge occurred in the prisoner's absence, and without his consent, after the jury had been out but a few hours. (*Ex parte* Ruthven, 17 Mo., 541.) And in another case where a verdict of guilty and fixing a punishment unsatisfactory to the court was set aside by the court on its own motion, and the prisoner held for another trial. (*Ex parte* Snyder, 29 Mo. App., 256.) Though there was a statute in Missouri somewhat like the one in Indiana, it is apparent that it was not deemed to take away the right to habeas corpus where want of jurisdiction appeared; and hence the decisions above cited may be regarded as authority, we think, upon the point that the improper discharge of a trial jury does not divest the court of jurisdiction, although it may have resulted in placing the accused in jeopardy. Indeed in State ex rel. v. Williams, 117 Mo. App., 564, it was held that, notwithstanding a party had been in jeopardy and was entitled to be discharged on motion in the trial court, after an improper discharge of the jury pending a previous trial had occurred, yet the court retained jurisdiction, so that prohibition would not lie to restrain further proceedings. (See also *Ex parte* Bedard, 106 Mo., 616.)

In Texas, habeas corpus is held not the proper remedy to try the issue of former acquittal, but that the appropriate remedy is by special plea entered in the court wherein the indictment is pending, under which the party is imprisoned. (Pitner v. State, 44 Tex., 578; *Ex parte* Crofford (Tex. Cr. App.), 47 S. W., 533.) In the Crofford case the defense was raised upon an alleged discharge of the jury in the enforced absence of the accused on trial. The court said: "This is not a novel question in Texas. Since the case of Perry v. State, 41 Tex., 488, the decisions have

been uniform that the writ of habeas corpus cannot be resorted to for the purpose of discharging an applicant on a plea of former jeopardy."

However, in *Ex parte* Davis, 89 S. W., 978, the Texas court of criminal appeals had under consideration a case where it was contended that a verdict of not guilty rendered upon a trial of the accused in one county constituted a constitutional objection to a trial for the same offense in another county, there having been a serious question in the case as to venue.   The constitution provided that "No person for the same offense shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction."   The court regarded this provision as distinguishing between jeopardy and a verdict of not guilty in a court of competent jurisdiction; and concluded that after a verdict of not guilty the only way to avoid a second trial, if the same is being proceeded with, is to interpose the writ of habeas corpus; and it was said that the statutes and their decisions gave the court great latitude in the issuance of such writ.   The other Texas cases above cited were not referred to, and the doctrine of the case last cited evidently applies only to cases where there may have been an actual verdict of acquittal.

That no inquiry can be had on habeas corpus as to whether the prisoner was present or absent when the jury impaneled and sworn to try him upon an indictment had been discharged from further consideration of the case, or whether such discharge was proper or not, was held in State v. The Sheriff, 24 Minn., 87.   The court said: "The fact, therefore, if it be one, that the court improperly discharged the jury in the enforced absence of the prisoner, did not dispossess the court of its jurisdiction over the cause."   To the same effect, where the jury was discharged for disagreement over the objection of the accused, is the case of *Ex parte* McLaughlin, 41 Cal., 211.   In *Ex parte* Hartman, 44 Cal., 32, whether an arrest of judgment upon

a verdict of a less offense under an indictment charging
assault with intent to murder constituted jeopardy was held
to be a question not competent for consideration in an aplica-
tion for habeas corpus, where the accused, after the arrest of
judgment, had been remanded to await the action of the next
grand jury upon the charge originally preferred.

In Steiner v. Nerton, 6 Wash., 23 (32 Pac., 1063), a trial
jury had been discharged, the indictment quashed, and,
later, an information filed upon which the accused was
being held for trial.  Claiming former jeopardy, he applied
for discharge on habeas corpus, but the same was denied—
the court saying: "If the petitioner has been before in
jeopardy for the same offense, that is a proper plea in bar,
to be tried by the court, and from the decision of which
an appeal would lie to this court."  A like conclusion was
reached in the case of In re Allison, 13 Colo., 525.

The principle under discussion is further illustrated by
cases where the claim of former jeopardy has arisen out of
circumstances other than the discharge of a trial jury.  In
a Colorado case the petitioner for habeas corpus was in
jail awaiting trial on a charge of murder.  He had been
once tried and found guilty of manslaughter, and announced
himself ready to receive sentence upon the verdict.  The
court declined to pass sentence, but, over the objection of
the petitioner, ordered the verdict set aside, and a new
trial had.  A motion for the prisoner's discharge was then
made on the ground of former jeopardy, and denied, and
he was remanded to await trial.  On petition for habeas
corpus before the supreme court, it was held that the de-
fense of former jeopardy could not be raised in that pro-
ceeding.  It was contended by counsel that as all the facts
appeared upon the record in respect to the plea, it entitled
the party to be heard and to be discharged in the summary
proceeding; the court recited a part of the argument and
stated its conclusion as follows: "In support of this prop-
osition they urge that in such circumstances, where the
petitioner has already moved the trial court for a discharge

upon the ground now urged in support of his application, he should not be subjected to another trial, or the formality of submitting to a jury undisputed questions of fact, the force and effect of which are entirely a question of law. These matters do not change the rule with respect to questions which can be inquired into on applications of this character. It has uniformly been held by this court that in habeas corpus proceedings only jurisdictional questions can be reviewed." The court in further discussing the question, stated in substance that the trial court had not lost jurisdiction, but was authorized to hear and determine the claim of once in jeopardy, and the question whether there should be another trial, and that, though the court might decide the question erroneously, it would not be divested of jurisdiction, nor would the question be available on habeas corpus. (*In re* Mahany, 68 Pac., 235.)

*In re* Terrill (Kan.), 49 Pac., 158, was a case where a party claimed to have been in jeopardy through a former conviction which had been held void because the trial had occurred when the court was without power to sit. Being held to await another trial, he sought release on habeas corpus. It was held that the question of former jeopardy could not be determined on habeas corpus. To the same effect the following additional cases, where the claim was made after an alleged previous conviction or acquittal. (State v. Sheriff, 45 La. Ann., 316; Com. v. Norton, 8 S. & R., 72; People v. Rulloff, 3 Park. Cr., 126; *Ex parte* Bennett, 51 Ark., 215; State v. Sistrunk, 138 Ala., 68; *In re* Bogart, 2 Sawy., 396; State v. White (Kan.), 80 Pac., 589; Miller v. Case (Kan.), 51 Pac., 922.) The case of State v. White, *supra*, was not decided on habeas corpus, but the question of jurisdiction on a second trial was before the supreme court, on error, the jury having been discharged, as claimed, irregularly upon a previous trial. It was contended that, though no plea of former jeopardy had been presented, and no objection made to the second trial on that ground, the facts were in the record

and showed the second trial to have been without jurisdiction. The court, however, held otherwise, expressly stating that the district court did not lose jurisdiction; and that by not having objected to the second trial on the ground of jeopardy because of the alleged improper discharge of the jury, the objection had been waived. In the Pennsylvania case of Commonwealth ex rel. v. Norton, *supra,* the petitioners had been found not guilty on nine counts of an indictment containing sixteen counts, the verdict not referring to the remaining counts. Having been afterwards committed for trial upon the other seven counts, the prisoners sought their discharge on habeas corpus on the ground that the verdict was in effect an acquittal on the whole indictment. The court refused to discharge for the reason that the court where the indictment was pending had jurisdiction, and if an erroneous judgment should be given the remedy would be by writ of error.

Our investigation of this question has resulted in the discovery of but three cases which appear to be flatly opposed to the principle supported by the array of authorities above cited. One of them, *Ex parte* Ulrich, 42 Fed., 587, was afterwards reversed by the circuit court in the case of *In re* Ulrich, 43 Fed., 661, above referred to. Another case, *In re* Bennett, 84 Fed., 324, decided by United States District Judge De Haven, in California, holds that after the reversal of a conviction of a less offense than the one charged a sentence upon conviction of the greater offense upon the same indictment on a second trial in the same court is void in the extreme sense, as in violation of the constitutional exemption of the accused from a second jeopardy. A discharge was, however, refused in that case for the reason that there had not been an acquittal of the less offense. *Ex parte* Glenn, 111 Fed., 257, decided by District Judge Jackson, in West Virginia, holds that an accused is entitled to be discharged on habeas corpus when committed for a second trial upon an indictment, after such an improper discharge of the jury at the first trial as to render the trial

equivalent to an acquittal. The opinion in the Bennett case refers to the case of *In re* Bigelow, 113 U. S., 328, above cited, but evidently regarded it as inapplicable. The opinion in the Glenn case does not notice the Bigelow case, nor, indeed, any of the authorities laying down the same doctrine. The fact is that in the Bigelow case the second trial had occurred in the same court upon one of the same indictments involved in the former trial; so that if the proceedings of the former trial amounted to an acquittal upon all the indictments as claimed, the fact appeared upon the record of the court in relation to the indictment under which the second trial was had. It is, therefore, difficult to distinguish the Bigelow case from the Bennett and Glenn cases. That the Bigelow case continues to be regarded as authority by the supreme court upon the question thereby decided is evident from its citation and approval in two subsequent cases. (*In re* Belt, 159 U. S., 95; Whitten v. Tomlinson, 160 U. S., 231.) In the case last cited it was said with reference to a contention that there had been a previous disposition of the offense charged in another court, "Whatever effect it (the other proceeding) might have, if pleaded to a subsequent indictment, affords no ground for his discharge on habeas corpus."

The supreme court of the United States, however, has had occasion to distinguish between the case of *In re* Bigelow and one where, after one conviction, the accused has been again convicted upon the same indivisable act for the same offense and sentenced upon both convictions. *In re* Snow, 120 U. S., 274. In that case Snow had been charged, convicted and sentenced upon three indictments in Utah charging the offense of unlawful cohabitation. The alleged unlawful cohabitation appeared to have been continuous, but it was divided by the prosecution and grand jury arbitrarily into three periods and an indictment presented covering each period. After serving the sentence upon the first conviction habeas corpus was applied for. The court held that the act throughout the entire period constituted

but one offense, and that one conviction and sentence for
any part of the period exhausted the power of the court to
punish for the offense.   Hence, although the constitutional
immunity relied upon was the exemption from second jeop-
ardy, the precise ground of the decision was that the court
had no jurisdiction to inflict a punishment in respect of more
than one of the convictions.   This case was followed by *In
re* Hans Neilsen, 131 U. S., 176.   The petitioner there had
pleaded guilty to unlawful cohabitation and was sentenced
to pay a fine and be imprisoned in the penitentiary.   After
he had suffered the penalty he was put on trial for the crime
of adultery with the same woman during the same period
covered by the indictment for unlawful cohabitation upon
which he had been punished.   He was convicted over a plea
of former conviction, and again sentenced to the peniten-
tiary.   It was held that there had been a double conviction
and sentence for one and the same criminal act; and that
the last sentence was void as beyond the jurisdiction of the
court, the first sentence having exhausted the court's power
in the premises.   Those cases were deemed to be in line
with the leading case of *Ex parte* Lange, 18 Wall., 163.

There may be cases where a prisoner has been discharged
on habeas corpus on the ground of former jeopardy, where
the question of the right to the writ under the circumstances
was not raised.   They might be persuasive, but hardly con-
trolling authority where the objection to the use of the writ
in such cases is presented.   Such a case apparently is State
v. Blevins, 134 Ala. 213, (92 Am. St. 32.)   In that case,
however, upon a trial for assault and battery, the court, in-
stead of pronouncing judgment on the charge which was
tried, found that the accused was guilty of another crime,
viz: assault with intent to ravish the complaining witness,
and thereupon bound the accused over for his appearance to
answer to the latter charge.   It might well be held that the
court exceeded its jurisdiction in the premises, although the
opinion in the case seems to put the discharge upon the
ground of former jeopardy.   In view of the facts in the

case it appears to be distinguishable from the case at bar and other like cases.

The main reliance of the plaintiff is upon the Oregon case of *In re* Tice, 49 Pac., 1038, which, upon the facts, more nearly resembles the case before us than any other coming to our notice. In that case the jury was discharged for disagreement on Sunday, and on the same day the defendant was ordered committed pending a retrial. The fact that the committing order was made on Sunday may distinguish that case from the one here. But the court in that case, while apparently not questioning the general rule that an improper discharge of a jury would not ordinarily deprive the court of further jurisdiction, held that the order of discharge on Sunday being a void act, habeas corpus became a proper remedy for the prisoner's discharge. One of the cases cited by the court in support of its conclusion is Maden v. Emmons, 83 Ind., 331, which has since been overruled in Indiana, as above noted. The case of State v. McGimsey, 80 N. C., 377, also cited, was not a habeas corpus case, but was before the appellate court on *certiorari;* and that was held a proper remedy for the review of the error complained of in the exercise by the court below of its jurisdiction. The case of *Ex parte* White, 15 Nev., 146, which is also cited, depended upon the application of a different principle. There a magistrate had on Sunday received a plea of guilty and entered a sentence of imprisonment. Under such a condition the accused was clearly held under a void judgment, assuming that the court was not authorized to sit or render judgment on Sunday.

Nothwithstanding that the Oregon court, for whose opinions we entertain great respect, seems to distinguish the discharge of a jury upon a non-judicial day from a discharge upon a lawful day for an improper or unauthorized reason, in its effect upon the jurisdiction of the court, we think that the case cited is out of harmony with the general line of decisions respecting the jurisdictional consequences of an unnecessary or irregular discharge of a jury on a criminal trial.

We are unable to agree with the reasoning and conclusion of the Oregon case that a void act discharging the jury operates to divest the court of further jurisdiction in the case. As previously suggested, whether the discharge be a void act, because occurring on a non-judicial day, or improper or unauthorized for any other reason, the trial, through the irregular or unauthorized act, will have come to a close without a verdict, so that, if the act of discharging the jury be held to have been unauthorized and not to have been waived by any act or conduct of the defendant, if a waivable matter, the latter will have been in jeopardy. By such erroneous procedure, however, the court does not divest itself of jurisdiction to hear and determine any further motions, pleas or other applications that may be presented in the case; and even to hold another trial of the case if a plea of former jeopardy should be heard and overruled, although, in doing so, grave error may be committed.

Suppose it to be conceded that the act of the court in discharging the jury was absolutely void. The prisoner is not held under that order, any more than if he should be held under a warrant of arrest or commitment upon a new information. The old information is still pending and undisposed of, and the plaintiff's commitment is for trial thereon. She has already submitted a plea of some kind in bar of another trial, and that plea has been overruled. Let it be assumed that she interposed in defense of the pending charge the former proceedings, or that she will do so. If it be true that those proceedings amounted to an acquittal, then her plea ought to be sustained, and the court has erred or may err in otherwise disposing of it. But the jurisdiction of the court to hear and determine the plea is clear, it seems to us; and the error, if any, in such determination may be reviewed and corrected before the proper court in the mode pointed out by law. It ought not to be considered on habeas corpus, in which proceeding this court has no greater authority than a single justice, or a district judge would have upon a similar application. We are of the

opinion that, though it is possible that the court may have erred, its act in committing the plaintiff was within the legitimate province of the court while acting in a lawful manner; and, by express command of the statute, it is not permissible in this proceeding to question the correctness of the committing order.

For the above reasons we think it not only unnecessary, but improper, to consider the other questions presented; and we are constrained to refuse to discharge the plaintiff from the custody of the sheriff.

BEARD, J., and SCOTT, J., concur.