UNITED STATES of America

v.

Ben R. HARRIMAN, Jerry Siner and Frank Louis De Rosa, Defendants.

United States District Court,
S. D. New York.

April 1, 1955.

J. Edward Lumbard, U. S. Atty. for Southern District of New York, New York City (Clement J. Hallinan, Jr., New York City, of counsel), for U. S.

Louis Bender, Daniel J. Riesner, New York City (Louis Bender, Julian Jawits, Richard I. Donner, New York City, of counsel), for defendant Ben R. Harriman.

MURPHY, District Judge.

This is a motion for an order dismissing an indictment made by the defendant Harriman on the grounds that he has been in jeopardy at a previous trial of other consolidated indictments, and that trial of the instant indictment would constitute being in jeopardy twice in violation of the Fifth Amendment of the United States Constitution.

On November 25, 1952, two indictments (No. C 140–65 and C 140–66) were filed against Harriman and others. C 140–65 charged violation of 18 U.S.

C.A. § 656 [1] in that defendants embezzled, abstracted and wilfully misapplied certain monies of the Royal Industrial Bank of New York. The indictment alleged that this bank was a member bank of the Federal Reserve System. Indictment C 140–66 alleged a similar offense involving monies of the Trade Bank & Trust Company. The two indictments were consolidated for trial.

On August 16, 1954, after a jury had been impanelled and both sides had made opening statements to the jury, and during direct examination of the government's first witness, the government offered in evidence a certificate that the Royal Industrial Bank of New York was a bank insured with the Federal Deposit Insurance Corporation. Defendants objected to its admissibility on the ground that Indictment C 140–65 alleged that the bank in question was a member of the Federal Reserve System. Thereupon the government moved to conform the indictment to the proof, and then withdrew this motion contending that there was an immaterial variance between indictment and proof that should be disregarded under the provisions of Rule 52 (a), Federal Rules of Criminal Procedure, 18 U.S.C.A.

On the third day of trial the court excused the jury for the following day with announcement that defendants had made a motion and submitted briefs on which argument was to be heard. Upon argument on the fourth day, defendants moved to dismiss Indictment C 140–65. Argument continued on the fifth day in absence of the jury, after which the court dismissed Indictment C 140–65 on the ground of a material variance between indictment and proof. Defendants' motion made thereafter for judgment of acquittal under Rule 29, Federal Rules of Criminal Procedure, was denied. An appeal from this ruling was dismissed by the Court of Appeals without opinion,[2] citing United States v. Shelley.[3]

On February 2, 1955, the instant indictment was filed, and defendants pleaded not guilty on February 11, 1955. On this motion addressed to that indictment, defendant Harriman insists that dismissal of the previous indictment was a judgment of acquittal that is res judicata with respect to identical matters presented in the instant indictment, that the instant indictment places him in jeopardy a second time, and that he has not waived his rights against double jeopardy by moving to dismiss the previous indictment. The government contends that the offense alleged in the instant indictment is different from that charged in the dismissed indictment, and that defendant cannot now assert that dismissal of the previous indictment was improper because the variance was im-

---

1. *"Theft, embezzlement, or misapplication by bank officer or employee*

"Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"As used in this section, the term 'national bank' is synonymous with 'national banking association'; 'member bank' means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; and 'insured bank' includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation."

2. United States v. Harriman, 2 Cir., 219 F.2d 918.

3. 2 Cir., 218 F.2d 157.

material when dismissal was urged on grounds that the variance was material.

Any review of the cases "indicate the subtle technical controversies to which the provision of the Fifth Amendment against double jeopardy has given rise."[4] The controversies are posed by varying patterns in which the question of double jeopardy has been raised: (1) The initial case may be taken from the jury without verdict, whether for necessity, or arbitrarily, or on some erroneous ruling on jurisdiction or time limitation; (2) The case may have reached verdict and judgment of conviction that is nullified by defendant's motion or appeal; (3) The first trial may have resulted in acquittal which is set aside because of error prejudicial to the prosecution. In any of these situations a defendant may subsequently be convicted and sentenced for the same offense, or a less serious one includable in the original charge, or of some related offense, and the additional problem of application of the numerous "same offense" tests and doctrine of res judicata is presented. The instant case falls, of course, in the first category.

## I

We are met at the outset by the government's contention that different offenses are charged in the dismissed indictment and the one now before the court. Regardless of the manner in which the first trial terminated, former jeopardy cannot bar a second prosecution unless it appears that the same offense is charged in the second indictment.[5] Concededly the second indictment is similar to the first one in all respects except these:

(1) In the second indictment, the words " * * * State bank the deposits of which were insured by the Federal Deposit Insurance Corporation, to wit, the Royal Industrial Bank of New York" are substituted for the words " * * * a member bank of the Fed-

eral Reserve System, to wit, the Royal Industrial Bank of New York", found in the first indictment.

(2) The words "embezzle" and "abstract" in the first indictment are omitted from the second one. Thus where the first indictment alleged that the defendant "did unlawfully, wilfully and knowingly embezzle, abstract and misapply moneys * * * *", the second one charges that he "did unlawfully, wilfully and knowingly misapply moneys * * * *."

Conceivably by strict application of some tests that courts have employed for closely related offenses, e. g., the "same or different evidence" one, the second indictment might be construed to charge a separably punishable offense from the first without violation of the double jeopardy safeguard. A different result might follow by applying other tests, e. g., the "same transaction", "one act and one intent" or possibly the "same offense in law and in fact." For purposes of this motion, it may be assumed *arguendo*, without deciding, that the same offense is charged in the instant indictment as the one alleged in the dismissed indictment.

## II

Upon this assumption, defendant contends that dismissal of the first indictment amounts to a determination favorable to defendant of material issues that must be proven by the government under the instant indictment. No doubt a prosecution should be barred if it could not result in conviction without finding against the defendant on an issue previously found in his favor, at least in a criminal trial involving the same parties and free from judicial error. The doctrine of res judicata is thus available in criminal cases where there has been a prior acquittal,[6] or even an appellate reversal of denial of judgment of acquittal

4. Brock v. State of North Carolina, 344 U.S. 424, 428, 73 S.Ct. 349, 351, 97 L.Ed. 456, concurring opinion.

5. See Gavieres v. United States, 220 U.S. 338, 342–343, 31 S.Ct. 421, 55 L.Ed. 489; U. S. v. Bendik, 2 Cir., 220 F.2d 249.

6. Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180.

after verdict of guilty.[7] But the instant case presents no such final determination on the merits of any material issue that must be proven under the second indictment. Indeed the trial judge denied defendants' motion for just such determination, viz., a judgment of acquittal under Rule 29, Federal Rules of Criminal Procedure, with opinion, and this ruling has remained unreversed.[8]

### III

■■■ There remains to be considered defendant's claim that dismissal of the first indictment by the trial judge placed him in jeopardy so that trial of the instant indictment would constitute a second jeopardy contrary to provisions of the Fifth Amendment. The constitutional safeguard contemplated that federal criminal courts have "the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere."[9] This rule "has been the basis for all later decisions of this [Supreme] Court on double jeopardy."[10] The circumstances under which a jury may thus be discharged and defendant

again tried for the same offense include inability of the jury to agree upon a verdict,[11] and discovery after commencement of trial that a juror is acquainted with the defendant,[12] or was a member of the grand jury that returned the indictment being tried,[13] or appears to be insane,[14] or ill.[15] On the other hand, if the case is taken from the jury without evident necessity and for mere matter of convenience, a second trial for the same offense will amount to double jeopardy. Possibly when the prosecutor obtains dismissal because his evidence is insufficient,[16] or all of his witnesses are not present,[17] a second trial may be barred. The rationale of this line of demarcation between reasons of necessity and ones of convenience in discharging a jury has been simply stated by Justice McLean on circuit long ago:

> "The discharge of a jury in a criminal case, on the ground of a necessity which could neither be foreseen nor controlled, imposes no hardship on the defendant of which he has a right to complain. He, alike with the government, must submit to the law of necessity, which, of all other laws, is the most inexorable."[18]

This rule of necessity, still observed, "attempts to lay down no rigid formula. Under the rule a trial can be discontinued when particular circumstances mani-

7. Sapir v. United States, 348 U.S. 373, 75 S.Ct. 422.

8. United States v. Harriman, C 140-65, No. 21348, memorandum by Dawson, D. J., September 3, 1954, appeal dismissed, 2 Cir., 219 F.2d 918.

9. United States v. Perez, 9 Wheat. 579, 580, 6 L.Ed. 165.

10. Wade v. Hunter, 336 U.S. 684, 690, 69 S.Ct. 834, 838, 93 L.Ed. 974.

11. United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429. But cf. People ex rel. Stabile v. Warden of City Prison, 202 N.Y. 138, 95 N.E. 729.

12. Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968.

13. Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146.

14. United States v. Haskell, C.C.E.D.Pa., 26 Fed.Cas. p. 207, No. 15,321.

15. United States v. Potash, 2 Cir., 118 F.2d 54, certiorari denied 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540.

16. Cf. Clawans v. Rives, 70 App.D.C. 107, 104 F.2d 240, 122 A.L.R. 1436, with Bassing v. Cady, 208 U.S. 386, 28 S.Ct. 392, 52 L.Ed. 540.

17. Cornero v. United States, 9 Cir., 48 F. 2d 69, 74 A.L.R. 797.

18. United States v. Shoemaker, C.C.D.Ill., 27 Fed.Cas. pp. 1067, 1068, No. 16279. See Parker, Some Aspects of Double Jeopardy, 25 St. John's L.Rev. 188 (1951).

fest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." [19]

■■ Was the discontinuance of the first trial for reasons of necessity to serve the ends of justice? The trial court explained its position in these terms:

"It would therefore mean that if this indictment continues on trial in its present form, that at the conclusion of the case I would be in a position where I would have to charge the jury that the proof that the Royal Industrial Bank was an insured bank was the equivalent of proof that it was a member bank within the terms of the indictment. That, I believe, would be the equivalent of my granting an amendment to the indictment, which I have no power to do. I would therefore be forced to rule at the conclusion of the trial, if it proceeded, that proof that the Royal Industrial Bank was an insured bank was not sufficient to sustain a conviction under the particular language of this indictment.

"Under those circumstances it would seem to me that it would be rather futile to proceed with the taking of evidence in what may be a long-drawn-out trial of an indictment, when the Government admits that it will not have the evidence which would sustain that particular indictment, which is not to say that the Government might not have the evidence if there were a re-indictment. That fact is not for me to determine; that is a matter for a grand jury to determine."

Elsewhere, however, the trial court indicated, so far as relevant to the question of necessity:

"I consider it very unfortunate that this time was taken up in connection with an indictment which the Government obviously and knowingly did not have the proof on when they started the trial and which easily could have been corrected long in advance of consuming time of the Court and the jury. It was a technical defect in the indictment, a wrong description of the nature of the bank referred to in the indictment, and I think it should have been corrected long ago."

When a variance appears upon trial between an allegation in an indictment and its proof with respect to time of commission of a crime or in the name or description of any place, person or thing, an amendment to an indictment is permissible under the practice of some jurisdictions, provided the defendant cannot be prejudiced in defense on the merits.[20] In such jurisdictions discharge of the jury without defendant's consent would bar subsequent trial for the same offense.[21] On the other hand, in those jurisdictions, when any such matters are a material ingredient and there is a variance, dismissal is not a bar to subsequent prosecution because the indictment could not have been amended on trial.[22]

In the federal courts, no provision is explicitly made at present for amendment of indictments. If we understand the defendant's position, it now is that the variance in the first indictment was immaterial and could have been disregarded as harmless error under Rule 52 (a), Federal Rules of Criminal Procedure,[23] since the trial court did not

---

19. Wade v. Hunter, 336 U.S. 684, 690, 69 S.Ct. 834, 838, 93 L.Ed. 974.

20. See, e. g., N. Y. Code of Criminal Procedure, §§ 280, 281, 293.

21. People v. Johnson, 104 N.Y. 213, 10 N.E. 690; People v. Castaldo, 146 App. Div. 767, 131 N.Y.S. 545.

22. People v. Bromwich, 200 N.Y. 385, 93 N.E. 933. And see United States v. Aurandt, 15 N.M. 292, 304, 107 P. 1064, 27 L.R.A.,N.S., 1181.

23. Cf. 18 U.S.C.A. former § 556 and cases cited in Hagner v. United States, 285 U.S. 427, 432ff, 52 S.Ct. 417, 76 L.Ed. 861.

choose to disregard the matter, *ergo* it unnecessarily discharged the jury thus creating the first jeopardy for defendant. The question then is whether error in an indictment concerning description or qualification of the victim of a crime, and not relating to behavior of the defendant alleged as criminal, is immaterial and capable of being disregarded as harmless, or is so material and prejudicial to defendant in depriving him of requisite notice as to require a fresh indictment.

This issue had been before the trial court and resolved by it. Should its determination, correct or not, be controlling as the law of the case on this motion? The principle of res judicata is not directly applicable since a motion to dismiss grounded on double jeopardy was not and could not have been before the trial court. Yet the identical *issue* involved here, viz., materiality of the variance, was disposed of, and unless disturbed on direct attack by an appellate court, might well collaterally estop a coordinate tribunal from making a contrary determination. This matter of collateral estoppel has been happily ignored in a few cases where upon motion such as this one, a district court has proceeded to resolve anew an issue previously disposed of by another district judge.[24]

We need not reach however this question or that of the materiality of the variance. Defendant moved for mistrial. A brief was submitted urging dismissal because of material, prejudicial variance between indictment and proof. The trial judge accepted the position of defendant, viz., that there would be prejudice to defendant if the case was permitted to go to the jury. Defendant now maintains before another district judge, as we understand his position on this motion, that the variance was quite immaterial after all so that dismissal bars a second trial.

Where defendant consents to a mistrial, or where, as in the instant case, defendant moves for the mistrial, he is deemed to have waived the constitutional bar to a second trial because as Justice Douglas recently observed concerning a defendant's motion for a new trial, "the defendant opens the whole record for such disposition as might be just."[25] Whatever merit there may be in the dissenting criticism of the waiver theory by Justice Holmes,[26] it should be noted that he concurred in the result in Trono v. United States,[27] in which the court observed that the "difference is vital between an attempt by the government to review * * * and the action of the accused person in himself appealing * * *."[28]

The instant case is stronger than mere consent by defendant or a motion by him for dismissal or mistrial. Here defendant assumed the position that he would be prejudiced by a variance between indictment and proof, and that such variance was material in the course of the first trial. The same defendant now finds it expedient to characterize the variance as one that did not make discharge of the jury in the first trial a matter of evident necessity. To permit the safeguard against double jeopardy to bar a second trial whenever a defendant can successfully maintain one course in the first trial and its opposite in the second one would nullify those "ends of public justice" that the constitutional provision was designed to serve.

Motion for dismissal by defendant is accordingly denied.

24. See, e. g., United States v. Whitlow, D.C.D.C., 110 F.Supp. 871.

25. Sapir v. United States, 348 U.S. 373, 75 S.Ct. 422, 423.

26. Kepner v. United States, 195 U.S. 100, 134–137, 24 S.Ct. 797, 49 L.Ed. 114.

27. 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292.

28. Id., 199 U.S. at page 529, 26 S.Ct. at page 122.