## UNITED STATES v. GILES et al.

### No. 11619.

District Court, W. D. Oklahoma.

June 15, 1937.

Brien McMahon, Asst. Atty. Gen., Dan M. Jackson, Sp. Asst. to Atty. Gen., W. C.

Lewis, U. S. Atty., Western District of Oklahoma, of Oklahoma City, Okl., Edna Clary Clark, Asst. U. S. Atty., and Walter E. Gallagher, Sp. Atty., of Washington, D. C., for plaintiff.

Dudley, Hyde, Duvall & Dudley, of Oklahoma City, Okl., for defendants.

SYMES, District Judge.

We have for decision the joint and several motion of the defendants for their release and discharge, and plea of former jeopardy and bar; both grounded upon the same facts and one question of law. The four defendants were indicted in the Western District of Oklahoma for conspiracy to defraud the United States of large sums of money by the corrupt administration of the Federal Emergency Relief Act of 1933, as amended February 15, 1934, 15 U.S.C.A. § 721 et seq. The defendant Giles was Federal Emergency Relief Administrator for Oklahoma. Isom was purchasing clerk appointed by Giles. Hoover and Bigley were bidders desirous of selling horses and mules to the Oklahoma Emergency Relief Administration.

The defendants each pleaded not guilty and the cause came on for trial at Oklahoma City on May 26, 1936. A jury was duly impaneled and sworn. The government completed its testimony and rested. The defendants began the introduction of their testimony, but had not finished when court recessed on the evening of June 1st. During that day the trial judge, in open court and in the presence of the jury, made statements about the alleged extravagance and waste of federal relief funds and according to counsel, questioned the good faith of the prosecution, calling attention to other alleged similar transactions by many citizens of Oklahoma, whom he stated the government had not seen fit to prosecute. The remarks of the court were given wide publicity and extravagantly commented upon by the local newspapers, published the evening of the 1st and the morning of the 2d of June.

On the convening of court on the morning of June 2, 1936, the trial judge stated his remarks of the previous day were not justified, nor was the construction which the press had placed upon them justified; that he had gone further in his remarks than the circumstances warranted, and "I can see where the remarks of the court might be exceedingly prejudicial to the defendants in this case. I can see where they could be extremely prejudicial to the Government." And over objections of the defendants and each of them, he declared a mistrial and discharged the jury. An order having been made assigning the case for a new trial on June 7, 1937, upon the same indictment, the defendants filed these motions claiming that the proceedings so far had constituted jeopardy and that they could not be retried on the same indictment.

The plea of former jeopardy is of ancient origin. Blackstone in his Commentaries, Vol. 4, p. 315, Sharwood's Edition, states it thus: "If a person has been found guilty of manslaughter on an indictment and has had benefit of clergy and suffered the judgment of the law, he cannot afterwards be appealed." Nemo bis punitur pro eodem delicto, 2 Hawkins' Pleas of the Crown, 377. Or as Coke has it, Nemo debet bis puniri pro uno delicto, no one can be twice punished for the same crime or misdemeanor. Ex parte Lange, 18 Wall. 163, 21 L.Ed. 872. So to every indictment or information charging a crime, whether at common law or statute, a plea of autrefois acquit or autrefois convict is a good defense. Ex parte Lange, supra. This maxim, according to Bishop on Criminal Law (9th Ed.) Vol. 1, p. 729, was not fundamental but a matter of practice in England and the purpose of the rule seems to have been, originally at least, the prevention of double punishment for the same offense, rather than to bar a second trial. In this country it is fundamental and a part of our Constitution.

" * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U. S. Constitution, Fifth Amendment.

According to a well-considered early Connecticut case, it "Is based on the truth that a judicial proceeding lawfully carried on to its conclusion by a final judgment puts the seal of finality on the controversies determined by that judgment, and is not based on a theory that a person accused of crime has any natural right of exemption from those regulations of a judicial proceeding which the state deems necessary to make sure that the conduct and final result of that proceeding shall be in accordance with law." State v. Lee, 65 Conn. 265, at page 273, 30 A. 1110, 1111, 27 L.R.A. 498, 48 Am.St.Rep. 202.

And as Justice Holmes said (dissenting opinion in Kepner v. United States, 195 U.S. 100, at page 134, 24 S.Ct. 797, 806,

49 L.Ed. 114, 1 Ann.Cas. 655): "Everybody agrees that the principle in its origin was a rule forbidding a trial in a new and independent case where a man already had been tried once. But there is no rule that a man may not be tried twice in the same case."

The learned justice further observes that a defendant is no more in jeopardy when retried because of a mistake of law in his favor than if retried for a mistake of law that did him harm.

Enough has been said to show that a mere recitation of the rule is not helpful in a given case unless we explore the reasons back of it and the numerous exceptions, some of which have been recited. Our precise query arises from a factual situation apparently never before presented in the federal court. It is: Does the discharge of a jury before verdict by the judge on his own motion, because in the course of the trial he has inadvertently made remarks which he rightly feels could be extremely prejudicial to the defendants or the government, constitute a former jeopardy? The decisive authority, it would seem, is United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165. The defendant Perez was put upon trial for a capital offense and the jury being unable to agree were discharged without the consent of the prisoner or the government. The prisoner's counsel claimed his discharge as of right and the circuit judges certified the question to the Supreme Court. Mr. Justice Story, after holding that the facts constituted no legal bar to a future trial, made this broad statement since approved by that court in numerous cases: "We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge."

Agreeable to this authority, numerous exceptions to the rule have been made and are as firmly embodied in the law as the rule itself. Some but not all of the exceptions are cases holding a defendant may be tried a second time if the jury disagrees, United States v. Perez, supra; Keerl v. Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429, or notwithstanding their agreement and verdict, if the verdict is set aside on the prisoner's exceptions for errors in the trial, Hopt v. People of State of Utah, 104 U.S. 631, 26 L.Ed. 873, and United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300. And he may even be tried on a new indictment if the judgment on the first is arrested upon motion. Ex parte Lange, supra.

In Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968, the facts were similar in principle to those at bar. It was made to appear to the trial court during the trial of a criminal case that by reasons of facts not disclosed or known to the court when the jury was sworn, the jurors, or some of them, might be subject to bias or prejudice, so as not to stand impartial between the government and the accused. The matters had been disclosed and published in the newspapers whereupon the district attorney moved the court "To withdraw a juror, for the reason that, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."

The trial judge granted the motion "In order to prevent the defeat of the ends of justice, and to preserve the rights of the people, and also to preserve the rights of the accused to be tried by a jury, every member of which can render a verdict free from constraint."

On appeal the Supreme Court affirmed, quoting with approval the language of Mr. Justice Story, supra. Also alike is Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 74, 39 L.Ed. 146. It developed during the course of the trial that one of the petit jurors was a member of the grand jury that had returned the indictment. When this fact was made known to the court, it declared a mistrial and dis-

1012

charged the jury over the objection of the defendant. On appeal the plea of former jeopardy was rejected by the Supreme Court. It said: "That courts of justice are invested with the authority to discharge a jury from giving any verdict whenever, in their opinion, * * * there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury."

In Lovato's Case (Lovato v. New Mexico), 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244, a jury had been impaneled, sworn, and witnesses called, when it was made known to the court that the defendant had not been formally arraigned or entered a plea since the overruling of a demurrer. Thereupon the court dismissed the jury, the defendant was arraigned, pleaded not guilty, and the trial proceeded with the same jury. The Supreme Court affirmed, citing United States v. Perez, supra, holding there had been no former jeopardy.

United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161, 3 A.L.R. 516, is not in point. There a former indictment for the same offense had been quashed and the defendant discharged without day, on the ground that prosecution was barred by the statute of limitations. This was held to be a decision on the merits, so the case is set down with those holding there can be no second trial after a final determination on the merits. United States v. Nickerson, 17 How. 204, 15 L.Ed. 219; Kepner v. United States, supra.

Cornero v. United States (C.C.A.) 48 F.(2d) 69, 74 A.L.R. 797, is strongly relied upon by the defendants on the facts and law announced. The district attorney impaneled a jury and the trial was begun without the attendance of all his witnesses. Indispensable witnesses were absent, so the case was adjourned until the next day, when the district attorney announced his inability to go to trial due to their absence. After another continuance, the jury was discharged. Judge Wilbur held this a bar to a second trial, stating the situation presented was simply one where the district attorney entered upon the trial without sufficient evidence to convict; that there was no difference in principle between a discovery by the district attorney after the jury was impaneled that his evidence was insufficient and a discovery after he had called some or all of his witnesses; that the situation was entirely different from that in the cases cited above.

We need not examine the state cases cited at the bar and in the briefs. It suffices to say all turn upon the construction of similar, but not identical provisions in the organic law of particular states. Others, such as the very late case of Jackson et al. v. Superior Court (Cal.App.) 67 P.(2d) 384, merely hold the facts not sufficient within the rule to justify the action of the court.

So we conclude that federal courts are invested with the authority to discharge a jury from giving any verdict "Whenever, in their opinion," as stated in the Thompson Case, supra, "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury."

The Supreme Court has refused to catalogue in advance all the events that might justify the exercise of this power. Courts are not disposed to linger long over objections to rulings made in the course of a criminal trial that insure a fair trial to both parties, especially when the point raised is wholly beside the question of guilt or innocence. What the defendants really object to is the court's timely correction of error.

"Former jeopardy" is one of several immunities embodied in the Constitution to insure a citizen, accused of crime, a fair trial. Its application as a means to that end must be justified by the facts. Referring to these immunities, Justice Cardozo ("The Nature of the Judicial Process," p. 76) states in effect that they are concepts of generalities not always definitely defined. Their limits are not mapped and charted. Restraints that are today useful and rational may be arbitrary tomorrow, and vice versa and that liberty is not static and absolute.

As Mr. Justice Stone said in McGuire v. United States, 273 U.S. 95, at page 99, 47 S.Ct. 259, 260, 71 L.Ed. 556: "A criminal prosecution is more than a game in which the government may be checkmated and the game lost merely because its officers have not played according to rule."

This record forces the conclusion that the trial judge, in the exercise of the sound discretion vested in him, was justified in taking the case from the jury and declaring a mistrial. He was familiar with the

situation, the atmosphere of the trial, and the better judge of the effect his statements might have upon one or more of the jurors. If he acted impartially, as we must assume he did, his action was not only justified but required.

The defendants have the burden of proof to sustain their plea. Kastel v. United States (C.C.A.) 23 F.(2d) 156. Having failed, both motions should be and are denied.