# UNITED STATES v. POTASH et al.

## No. 137.

Circuit Court of Appeals, Second Circuit.
March 10, 1941.

Writ of Certiorari Denied May 26, 1941.

See 61 S.Ct. 1103, 85 L.Ed. ——.

ther defendants nor witnesses in the anti-trust case. Upon the indictment in the case at bar there was a prior trial which resulted in the jury being discharged on June 28, 1940, without having returned a verdict. This fact was alleged in a plea of double jeopardy filed just before the commencement of the present trial, which began on July 2, 1940. The overruling of this plea constitutes the appellants' first assignment of error.

They contend that a plea of double jeopardy must be sustained unless the reason for discharging the jury before verdict is entered upon the record. From the docket entries of June 28th nothing appears except that the jury resumed its deliberations at 10 A. M. and "at 12:45 P. M. the jury is discharged and mistrial ordered." But from the stenographic minutes of the proceedings had on June 28th, which the appellants appended to their plea in support thereof, it appears that only eleven jurors returned to the court room at 12:45 P. M. and that the trial judge expressed regret "about the outcome of this" and stated that "under the circumstances" the only thing he could do was to discharge the jury with the thanks of the court. The inference is obvious that the mistrial was ordered because one of the jurors had become incapacitated to continue with the case before the jury had completed its deliberations. In overruling the plea of double jeopardy Judge Goddard stated that this is what he understood had happened and asked if such was not the fact. His inquiry elicited no denial from the defendants' counsel, who merely insisted that upon the record of the trial the plea should be sustained.

Since the appellants have found no federal authority supporting their technical contention, they argue that resort must be had to the common law, and they cite certain state court decisions which declare broadly that the essential facts upon which the discharge is based must be entered of record so that an appellate court ·

Paul O'Dwyer, of Brooklyn, N. Y. (Kenneth E. Walser, of New York City, of counsel), for appellants.

John T. Cahill, U. S. Atty., of New York City (Jerome Doyle and Peter J. Donoghue, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The appellants were tried and convicted under an indictment charging them and others, who were acquitted, with conspiracy to obstruct justice and corruptly to endeavor to influence and intimidate witnesses in a criminal anti-trust case then pending in the district court for the southern district of New York, contrary to the statute, the text of which is printed in the margin.[1] Originally there were six appellants, but the appeal of Karpouzas has been discontinued. Of the remaining five, three were defendants in the anti-trust prosecution, and of these Potash and Winogradsky were convicted and Kochinsky was acquitted of that charge. The other appellants, Vafiades and Hatios, were nei-

[1] 18 U.S.C.A. § 241. "Whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or officer acting as such commissioner, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or officer acting as such commissioner, in the discharge of his duty, or who corruptly or by threats or force, or by any threatening letter or communication, shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein, shall be fined not more than $1,000, or imprisoned not more than one year, or both."

may review the trial court's ruling as a matter of law. See Hines v. State, 24 Ohio St. 134, 139; State v. Allen, 59 Kan. 758, 760, 54 P. 1060; State v. Jefferson, 66 N.C. 309, 312; People v. Parker, 145 Mich. 488, 500, 108 N.W. 999; compare People v. Greene, 100 Cal. 140, 34 P. 630; People v. Disperati, 11 Cal.App. 469, 105 P. 617. Some of these cases arose under state statutes which expressly require the reason for the discharge to be entered on the minutes, as in Hines v. State, supra. But whatever the state law may be, in the federal courts the recognized rule is that discharging a jury before verdict is a matter within the sound discretion of the trial court. United States v. Perez, 9 Wheat. 579, 580, 6 L.Ed. 165; Simmons v. United States, 142 U.S. 148, 154, 12 S.Ct. 171, 35 L.Ed. 968; Logan v. United States, 144 U. S. 263, 298, 12 S.Ct. 617, 36 L.Ed. 429. Granting that the exercise of such discretion may be reversed in a case of abuse, the burden should be on the appellant to show abuse. A defendant who pleads double jeopardy has the burden of proving his plea. Kastel v. United States, 2 Cir., 23 F.2d 156, 157, certiorari denied, 277 U.S. 604, 48 S.Ct. 600, 72 L.Ed. 1010. Here the appellants' plea incorporated the stenographic minutes which disclosed that only eleven jurors returned to the court room. The inference is plain that one of the jurors was incapacitated to continue. Under such circumstances the court had discretion to discharge the jury, even if both parties had consented (as they did not) to proceed with the reduced number. Gardes v. United States, 5 Cir., 87 F. 172, 177, certiorari denied 171 U.S. 689, 19 S.Ct. 884, 43 L.Ed. 1179. There was no error in overruling the plea of double jeopardy.

The appellants contend that there is not sufficient evidence of a common understanding to support the conviction of each of the appellants on a charge of conspiracy. As to Potash and Vafiades there can be no doubt of the sufficiency of the evidence. The witness Loukas testified to meetings and conversations with them in which they offered him a trip abroad at their expense and, failing in this, sought to persuade him to make "slips" in his testimony to be given in the anti-trust case. They also tried to get him to corrupt another witness, Soulounias. Perry also testified against them. As to Winogradsky Loukas testified to being addressed by him as "G-man" and told to decide whether to continue in the fur business or to work for the government; if he chose the latter, the union would cut off his supplies. Winogradsky and Potash proceeded to carry out this threat by recommending that a heavy fine be imposed upon Feil Fur Company for doing business with Loukas in violation of union rules. Testimony as to the part played by Hatios was given by Tzaras, who had been interviewed by the Federal Bureau of Investigation and indicated his willingness to testify in the anti-trust case, although he was not called as a witness. Tzaras testified that while he was held at Ellis Island for deportation, Hatios told him that he could get out on bail if he "could do what Ben Gold[2] says." Tzaras' fiancee, Mary Athens, also testified that Hatios told her to influence Tzaras "not to go against Ben Gold, and if he says anything in this court that he will be marked as an informer down at the market."

It is argued that even if the proof be found sufficient as to concert of action between Potash and Vafiades, evidence is lacking that either Winogradsky or Hatios acted in conspiracy with them or with any other of the convicted defendants. While it is true that a common purpose must be shown, its existence may be proved by circumstantial evidence. Clune v. United States, 159 U.S. 590, 592, 16 S. Ct. 125, 40 L.Ed. 269; Marino v. United States, 9 Cir., 91 F.2d 691, 699, 113 A.L.R. 975. Such common purpose may readily be inferred between Winogradsky and Potash; as defendants in the anti-trust case they had a common interest in preventing Loukas from testifying and they cooperated in carrying out the threat to destroy his business with Feil. As to Hatios the case is less clear; but it is pertinent to ask why he had busied himself in endeavoring to suppress testimony in a prosecution in which he was not a defendant. It is most probable that he would not have done so unless inspired by those who were defendants. A common purpose may be inferred where the parties concerned are pursuing the same object and adopt means leading to the same unlawful result. Stack v. United States, 9 Cir., 27 F.2d 16, 17; Allen v. United States, 7 Cir., 4 F.2d 688,

---

[2] Gold was a defendant in the anti-trust case as well as in the case at bar; in the former he was convicted, in the latter acquitted.

691; Parilla v. United States, 6 Cir., 280 F. 761, 763; Kelley v. People, 55 N.Y. 565, 576, 14 Am.Rep. 342; Wharton, Criminal Law, 12th Ed., § 1667. As to these four appellants we think the jury was justified in finding a common purpose and conspiracy.

■ As to Kochinsky we reach a different conclusion. It is difficult to make sense out of the confused testimony of Yioris. The utmost we can make of it is that Kochinsky asked Yioris what he was going to do about the case and, on being informed that Yioris was going to follow his lawyer's advice, requested Yioris to report by telephone what the lawyer told him. Even if the language relating to the lawyer's fee can be construed as an offer by Kochinsky to pay it, there is nothing to support the conclusion that he tried to influence Yioris as to the testimony he should give or to prevent his testifying. The only other evidence tending to implicate Kochinsky was his presence in Potash's office when the latter attempted to persuade Perry to give false testimony regarding Soulounias. Kochinsky took no part in the conversation. We do not think his mere presence at this interview sufficient to incriminate him. Knowledge of the existence of a conspiracy is not alone enough to constitute one a party to it. Lucadamo v. United States, 2 Cir., 280 F. 653, 657; Zito v. United States, 7 Cir., 64 F.2d 772, 775; Young v. United States, 5 Cir., 48 F.2d 26, 27. In our opinion the conviction of Kochinsky must be reversed.

■ There remain for consideration certain rulings on the admission of evidence of which the other appellants complain. During the direct examination of the government's witness Loukas, the district attorney was permitted to ask him questions regarding a written statement he had given to the Federal Bureau of Investigation concerning the matters as to which he was testifying. These questions were permitted on the theory that a remark by counsel for the defendants had cast aspersions upon the accuracy of his memory and the veracity of his testimony. The written statement was properly excluded, but the questions regarding it were also objectionable and cannot be justified, as the government attempts to do, on the doctrine of Di Carlo v. United States, 2 Cir., 6 F.2d 364. That doctrine is that when the issue of fabrication is raised a corroboratory statement is admissible if made by the witness before the existence of a motive to fabricate. It has no application here; the statement was not made before Loukas began to assist the government in preparing its case. Although the testimony regarding the statement should have been excluded, we do not regard its admission as sufficiently prejudicial to justify reversal. It afforded very little corroboration to what Loukas said on the stand to show that he had previously told it to the district attorney. If the jury believed his testimony such corroboration added nothing; if they did not, it could not have changed their minds.

■ The testimony of Seykora as to having read Loukas' testimony in the antitrust case concerning an attempt by Potash to bribe him was plainly objectionable as hearsay, but it does not require a retrial. Loukas' testimony in the case at bar had already convicted Potash if the jury believed it. What he said in the other case as to the attempted bribery added nothing to its credibility.

■ An alleged error affecting Hatios occurred on his cross-examination. On direct he had testified that he went to Ellis Island to talk with Tzaras about getting bail for him and that none of the defendants was mentioned as a possible source for procuring it. In cross-examination the district attorney was permitted to ask whether Hatios and Tzaras had not required a bail bond on a prior occasion and where they had obtained it. The purpose was to show that they then got bail through the union of which the defendants were members. During this line of questioning an answer by Hatios disclosed that he and Tzaras had been arrested during a strike in 1929. He finally said that he did not know who then put up the bail. The questions of the district attorney were not directed to the fact of arrest but to an instance where the two had been mutually interested in obtaining bail; they could have been answered without disclosure of Hatios' arrest. We find no error, and certainly no prejudicial error, in allowing the questions to be asked.

■ Finally, it is urged that the charge was erroneous in that the court failed to tell the jury that the witnesses Loukas and Perry were co-conspirators with Potash and Vafiades and their testimony should be viewed with care and caution. It is enough to say that no such request to

charge was made and that this court has held that "the warning is never an absolute necessity." United States v. Becker, 2 Cir., 62 F.2d 1007, 1009.

Judgments affirmed on the appeals of Potash, Winogradsky, Vafiades and Hatios; judgment reversed on the appeal of Kochinsky.