UNITED STATES of America,
Appellee,

v.

Dante Edward GORI, Defendant-Appellant.

No. 262, Docket 26048.

United States Court of Appeals
Second Circuit.

Argued March 11, 1960.

Decided July 22, 1960.

Petition for Rehearing Denied
Aug. 18, 1960.

44

Jerome Lewis, Brooklyn, N. Y., for defendant-appellant.

Cornelius W. Wickersham, Jr., U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Margaret E. Millus, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before LUMBARD, Chief Judge, and CLARK, WATERMAN, MOORE, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

This appeal, based upon the defendant-appellant's plea of former jeopardy to avoid a criminal conviction, came for hearing before a panel of this court consisting of Judge Waterman and the writer from this Circuit and Judge Lewis of the Tenth Circuit, sitting with us pursuant to statutory designation. In conference the court was in disagreement, Judges Waterman and Lewis voting to reverse and the writer voting to affirm. Draft opinions reflecting this disagreement, together with the briefs, record, transcript, and appendix, were then circulated among the active judges, a majority of whom, believing that the case presented a general problem important to the administration of justice in this circuit, thereupon voted for disposition of the appeal *in banc*, 28 U.S.C. § 46(c).[1] Four active judges having then voted to affirm, the writer was assigned to prepare an opinion reflecting this prevailing view.

The defendant was charged with having knowingly received and possessed goods stolen in interstate commerce in violation of 18 U.S.C. § 659. The trial got under way before Judge Abruzzo on February 4, 1959, after the declaration of a mistrial on the previous day.[2] From

1. Although disagreeing with the conclusion of the panel majority, the writer did not vote for the *in banc* procedure. In his experience such procedure does not reconcile differences, but in fact accentuates them. Hence it should be reserved for clarifying issues otherwise presented ambiguously or in a one-sided fashion. Here the important issue seemed fully presented, and there was the added difficulty of superseding the judgment of a distinguished visitor who had

graciously complied with our request for help. Though we have acted similarly in other cases, it appears not to be a settled practice in other circuits. See, e. g., National Latex Products Co. v. Sun Rubber Co., 6 Cir., 276 F.2d 167.

2. No point was made on this appeal as to this mistrial, which appears to have been granted upon motion of defendant after associate defense counsel was observed talking with one of the jurors.

the opening by counsel it appeared that the defendant would not contest his receipt and possession of stolen goods on February 11, 1958, with the codefendant Corbett—who pleaded guilty—but would claim that he acted without knowledge of their character and only as Corbett's hired employee. The Assistant United States Attorney attempted to prove this fairly simple case first by the testimony of the shipper's traffic manager, second by the truckman from whose truck the goods were stolen, and third by two FBI Special Agents investigating the theft. He ran into repeated difficulty, however, in part because of continuous formal objections by the defense, but even more by interference on the part of the trial judge, who repeatedly ordered the reframing of questions and otherwise took the conduct of the case away from him. The trial continued its rocky course throughout the morning and early afternoon until upon the examination of the fourth witness, Special Agent Deery, there occurred the colloquy set forth in the margin resulting in the declaration of a mistrial by the judge.[3] Later Judge Rayfiel in a reasoned opinion denied defendant's motion to dismiss the information on plea of former jeopardy, and he was convicted and sentenced to imprison-

3. "Patrick Joseph Deery, a witness called on behalf of the Government, having been duly sworn, was examined and testified as follows:

"*Direct Examination by Mr. Passalacqua:*

"Q. Mr. Deery, how long have you been an agent of the F. B. I.? A. Approximately eight and a half years.

"Q. Do you know the defendant Gori? A. Yes, sir, I do.

"Q. Do you know the co-defendant Corbett, who is not on trial today? A. Yes, sir.

"Q. When did you see the defendant Gori for the first time? A. February 10, 1958.

"Q. At about what time? A. Late in the evening, six o'clock.

"The Court: Please keep your voice up.

"The Witness: Yes, sir.

"Q. Were you alone or were you with another agent? A. No, I was with other agents.

"Q. Where did you see the defendant? A. I saw him in his automobile in the lower part of Manhattan, or Brooklyn. We observed his automobile at that time.

"Q. Do you recall the type of automobile he had? A. Yes, he had a—

"The Court: Mr. Passalacqua, please do not get immaterial evidence in here. I admonish you not to. Did you have a talk with him, yes or no?

"Mr. Passalacqua: Your Honor, will you please allow me—

"The Court: No, I won't allow you to try your case your way, because if you try it your way, we are going to have another mistrial.

"Mr. Passalacqua: Your Honor, I think—please allow me—

"The Court: I will give you the whole field. When I think you ought to stop, I will stop you. Go ahead, you try your case your own way.

"Mr. Passalacqua: Thank you.

"Q. Did you observe the defendant on February 11, 1958?

"The Court: Excluded.

"Mr. Gottesman: Objection.

"A. Yes.

"Q. When did you see the defendant Gori for the first time?

"Mr. Gottesman: Objection.

"The Court: That has been already answered, February 10th.

"Q. When did you see him for the second time? A. February—

"The Court: Excluded. You haven't even proved he saw him the second time.

"Q. Did you see him after February 10, 1958? A. Yes, I did.

"Q. Was he alone? A. He met another individual.

"Q. Where did you see him on February 11th—

"The Court: If you ask one more question that alludes to suspicion, I will withdraw a juror and put this case over to January of next year. Now, I want this crime proved, not nine others.

"Mr. Passalacqua: I am not referring—

"The Court: That is exactly what you are going to lead this jury to believe. These agents are helpless. They have got to—. Juror No. 1, step out. I declare a mistrial and I don't care whether the action is dismissed or not. I declare a mistrial because of the conduct of the district attorney.

"Mr. Passalacqua: I am not—

"The Court: You heard me. I don't want any more District Attorneys coming down here telling me how I am going to try the cases. And tell your chief if he doesn't want to put any more cases on before me, it is all right with me. That's all."

ment after a jury trial before Chief Judge Bruchhausen. He now appeals from both these actions of the district court, but relies only on the claim of former jeopardy and assigns no error as to his trial before Judge Bruchhausen.

The colloquy set forth in the margin demonstrates that the prosecutor did nothing to instigate the declaration of a mistrial and that he was only performing his assigned duty under trying conditions. This is borne out by the entire transcript, including also that covering the morning session. Nor does it make entirely clear the reasons which led the judge to act, though the parties appear agreed that he intended to prevent the prosecutor from bringing out evidence of other crimes by the accused. Even so, the judge should have awaited a definite question which would have permitted a clear-cut ruling. But if he was thus overassiduous, pursuing the command role which he had assumed for himself, it seems clear that he was acting according to his convictions in protecting the rights of the accused. The defense now urges that the judge was endeavoring to punish counsel's disobedience, but such a characterization, even if apt, adds nothing significant to his over-all purpose; and as to this the defense elsewhere states, "It is undeniable that the trial court was concerned with protecting the rights of the appellant." It is to be noted that the defendant made the original objections leading to the order of mistrial and that he made or attempted no protest to the order itself, but accepted the benefit of the new trial. We have the issue, therefore, whether active and express consent—something beyond acquiescence—is required to prevent this defendant, now convicted after a concededly fair trial, from receiving absolution for his crime by reason of the over-zealousness of the trial judge on his behalf. A majority of this court concludes that the federal law does not so command.

■ The mandate of the Fifth Amendment to the United States Constitution is " * * * nor shall any person

be subject for the same offense to be twice put in jeopardy of life or limb * * *." In considering whether the declaration of a mistrial precludes a subsequent prosecution for the same offense the Supreme Court has rejected any rigid formularization of the constitutional requirement in favor of a flexible application of the prohibition. Wade v. Hunter, 336 U.S. 684, 690, 69 S.Ct. 834, 93 L.Ed. 974. This approach originated in United States v. Perez, 9 Wheat. 579, 580, 22 U.S. 579, 580, 6 L.Ed. 165, where Justice Story stated: "We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere." This controlling principle was succinctly reiterated in Brock v. State of North Carolina, 344 U.S. 424, 427, 73 S.Ct. 349, 350, 97 L.Ed. 456:

"This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served. Wade v. Hunter, 336 U.S. 684 [69 S.Ct. 834, 93 L.Ed. 974]; Thompson v. United States, 155 U.S. 271, 273–274 [15 S.Ct. 73, 74, 39 L.Ed. 146]. As was said in Wade v. Hunter, supra, [336 U.S.] p. 690 [69 S.Ct. at page 638, 93 L.Ed. 974], 'a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice.'"

To the same effect are Lovato v. State of New Mexico, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244; Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968; United States v. Cimino, 2 Cir., 224 F.2d 274; United States v. Potash, 2 Cir., 118 F.2d 54, certiorari denied Potash v. Unit-

ed States, 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540; Scott v. United States, 91 U.S.App.D.C. 232, 202 F.2d 354, certiorari denied 344 U.S. 879, 73 S.Ct. 176, 97 L.Ed. 681; United States v. Giles, D.C. W.D.Okl., 19 F.Supp. 1009. It is to be noted that in none of these cases is the element of consent by the accused held necessary to obviate the constitutional bar; in fact, they are authority for the contrary view. Actually in several the mistrial had been declared either on the motion of the prosecution or by the court of its own motion, but over the vigorous opposition of the defense; this was the situation in the Simmons, Scott, and Giles cases, as well as in the Brock case, which concerned a state conviction reviewed under the Fourteenth Amendment.[4] In yet others, as in Lovato, Cimino, and Potash, it had been declared on the government's or the court's motion, with no showing of express consent by the accused. In all these the ultimate conviction was upheld against the plea of double jeopardy.

■■ The defendant relies on Himmelfarb v. United States, 9 Cir., 175 F.2d 924, 932, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527, as showing the need of consent; but such was not the court's approach there. Accepting the now well settled view that waiver or consent by the defendant barred his later resort to the plea,[5] the court first considered and held ineffective a waiver by counsel without his client's specific assent. Having thus cleared the way, it passed to the "real issue presented," which was "whether or not there was a legal necessity supporting the discharge of the first jury." And this it considered at considerable length with a wealth of

learning and citation of authority, concluding: "We think the court did not abuse its discretion." So the denial of the plea was upheld and the conviction was *affirmed*. To similar effect are cases such as Ex parte Glenn, C.C.N.D.W.Va., 111 F. 257, reversed on other grounds Moss v. Glenn, 189 U.S. 506, 23 S.Ct. 851, 47 L.Ed. 921, and United States v. Watson, D.C.S.D.N.Y., 28 Fed.Cas. page 499, No. 16,651. Thus while consent may bar resort to the plea, its absence does not relieve the judge of responsibility and discretion to discontinue a particular trial when justice so requires. Wade v. Hunter, supra, 336 U.S. 684, 689, 69 S.Ct. 834.

■ The law as thus stated comports more with our fundamental concepts of the federal administration of criminal justice than does the rigid and inflexible rule contended for by the accused. It has been a source of pride federal-wise that a United States district judge is more than a mere automaton or referee and bears an affirmative responsibility for the conduct of a criminal trial. This responsibility is particularly acute in the avoidance of prejudice arising from nuances in the heated atmosphere of trial, which cannot be fully depicted in the cold record on appeal. If the accused retains essentially a power of veto on pain of ban of all prosecution, even though fully justified, it is clear that the judge does not retain control of his courtroom and cannot act as he thinks necessary either to protect the interests of the litigants or to preserve proper respect for federal law administration. Even though there may be a rare case where in retrospect the judge may seem to have been overzealous in his protection of the rights of

---

4. So in Forman v. United States, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412, where the Court of Appeals, 9 Cir., 259 F.2d 128, had originally reversed a conviction and directed an acquittal, but later modified this to direct a new trial, 9 Cir., 261 F.2d 181, on motion of the government and against defense objection, the Supreme Court rejected the plea of double jeopardy.

5. See, e. g., Blair v. White, 8 Cir., 24 F. 2d 323; Barrett v. Bigger, 57 App.D.C. 81, 17 F.2d 669, certiorari denied 274 U.S. 752, 47 S.Ct. 765, 71 L.Ed. 1333; United States v. Harriman, D.C.S.D. N.Y., 130 F.Supp. 198, 204, notwithstanding Mr. Justice Holmes' view to the contrary stated in Kepner v. United States, 195 U.S. 100, 136, 24 S.Ct. 797, 49 L.Ed. 114.

an accused, we think the law is better served by the preservation of the responsibility which the federal precedents impose upon him.

■ On this basis we do not believe decision should be difficult, for the responsibility and discretion exercised by the judges below seem to us sound. Here the defendant was in no way harmed by the brief trial which, indeed, revealed to him the prosecution's entire case. He was thus in a position to start anew with a clean slate, with all possibility of prejudice eliminated and with foreknowledge of the case against him. The situation was quite unlike the more troublesome problems found in various of the cases, as where the prosecution desires to strengthen his case on a new start or otherwise provokes the declaration of mistrial, or the court has acted to the prejudice of the accused, or the accused has actually been subject to two trials for essentially the same offense.[6] On the other hand, for the defendant to receive absolution for his crime, later proven quite completely, because the judge acted too hastily in his interest, would be an injustice to the public in the particluar case and a disastrous precedent for the future.

I am authorized to say that Chief Judge LUMBARD and Judges MOORE and FRIENDLY concur in this opinion.

Conviction affirmed.

6. See full discussion in United States v. Sabella, 2 Cir., 272 F.2d 206, and Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, a 5–4 decision where the two opinions are notable for their historical exegesis of the plea. The question in Green was as to jurisdiction, after reversal on appeal, to retry the accused for the greater offense of which he had been originally acquitted. But the majority, in sustaining the plea and pointing out that it "prevents a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict," reiterate, 355 U.S. at page 188, 78 S.Ct. at page 224: "At the same time jeopardy is not regarded as having come to an end so as to bar a second trial in those cases where 'unforeseeable circumstances * * * arise during [the

WATERMAN, Circuit Judge (dissenting).

It is quite clear that the district judge, on February 4, 1959, ordered a mistrial because of actions which he believed to constitute trial misconduct on the part of the Assistant United States Attorney.[1] Accordingly, it must first be asked if a mistrial for this reason may be ordered by a district judge, acting entirely *sua sponte*, without giving rise subsequently to valid plea of former jeopardy under the Fifth Amendment. If not, a second question arises: did the defendant here expressly or impliedly request or consent to the mistrial order? I believe that both these questions must be answered in the negative, and therefore I dissent.

The former jeopardy clause of the Fifth Amendment reads as follows: " * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; * * * " The clause consistently has been interpreted not only to forbid multiple punishment for the same offense but also to forbid successive exposures to a single punishment. United States v. Ball, 1896, 163 U.S. 662, 666–671, 16 S.Ct. 1192, 41 L.Ed. 300; Ex parte Lange, 1873, 18 Wall. 163, 169, 85 U.S. 163, 169, 21 L.Ed. 872; and see also United States v. Sabella, 2 Cir., 1959, 272 F.2d 206, 208–210. Thus, once a jury has been impaneled and sworn[2] it is said jeopardy attaches, and

first] trial making its completion impossible, such as the failure of a jury to agree on a verdict.' Wade v. Hunter, 336 U.S. 684, 688–689 [69 S.Ct. 834, 837, 93 L.Ed. 974]." In United States v. Whitlow, D.C.D.C., 110 F.Supp. 871—a case criticized in 67 Harv.L.Rev. 346 (1953) for inflexibility—the court upheld the plea when the mistrial had been declared because of the misconduct of the defendant's counsel.

1. The district judge stated: "I declare a mistrial because of the conduct of the district attorney."

2. In a non-jury case it is stated that jeopardy attaches once the defendant has pleaded and the court has begun to hear evidence. Clawans v. Rives, 1939, 70 App.D.C. 107, 104 F.2d 240, 242, 122

if a mistrial is then ordered, subsequent prosecution is barred, Green v. United States, 1957, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199; Bassing v. Cady, 1908, 208 U.S. 386, 391, 28 S.Ct. 392, 52 L.Ed. 540; McCarthy v. Zerbst, 10 Cir., 1936, 85 F.2d 640, 642, certiorari denied 299 U.S. 610, 57 S.Ct. 313, 81 L.Ed. 450; Cornero v. United States, 9 Cir., 1931, 48 F.2d 69; Ex parte Ulrich, D.C.W.D.Mo.1890, 42 F. 587, reversed on other grounds, C.C.W.D.Mo.1890, 43 F. 661, appeal dismissed sub nom. Ulrich v. McGowan, 1893, 149 U.S. 789, 13 S.Ct. 1053, 37 L.Ed. 967, unless the defendant has consented to the mistrial order, Blair v. White, 8 Cir., 1928, 24 F. 2d 323; Barrett v. Bigger, 1927, 57 App. D.C. 81, 17 F.2d 669, certiorari denied 274 U.S. 752, 47 S.Ct. 765, 71 L.Ed. 1333; United States v. Harriman, D.C.S.D.N.Y. 1955, 130 F.Supp. 198, 204. It is settled that a plea of former jeopardy does not lie when a mistrial is ordered because of the jury's inability to reach an agreement after submission, Keerl v. State of Montana, 1909, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734; Dreyer v. People of State of Illinois, 1902, 187 U.S. 71, 84–87, 23 S.Ct. 28, 47 L.Ed. 79; Logan v. United States, 1892, 144 U.S. 263, 297–298, 12 S.Ct. 617, 36 L.Ed. 429; United States v. Perez, 1824, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165, or when a juror is discovered to be incompetent or becomes incapacitated, Thompson v. United States, 1894, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146; Simmons v. United States, 1891, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968; United States v. Potash, 2 Cir., 1941, 118 F.2d 54, certiorari denied 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540; United States v. Haskell, D.C.E.D.Pa.1823, 26 Fed.Cas. page 207, No. 15,321. There are also cases disallowing the plea of former jeopardy when the mistrial order resulted from the courtroom conduct of particular persons. Prior to this case the prosecuting attorney has not been included in this group. See United States v. Cimino, 2 Cir., 1955, 224 F.2d 274

(exclamations of a juror); Scott v. United States, 1952, 91 U.S.App.D.C. 232, 202 F.2d 354, certiorari denied 344 U.S. 879, 881, 73 S.Ct. 176, 97 L.Ed. 681 (withdrawal of associate counsel appointed by the court); United States v. Giles, D.C.W.D.Okl.1937, 19 F.Supp. 1009 (exclamations of a trial judge questioning Government's good faith in prosecuting); but cf. United States v. Whitlow, D.C. D.C.1953, 110 F.Supp. 871 (misconduct of defendant's counsel held too minor to nullify plea of former jeopardy). For reasons to be set forth subsequently I am of the opinion that a mistrial ordered because the trial judge believed that the prosecuting attorney was guilty of misconduct presents a different problem than that presented in these cases.

All the cases purporting to be exceptions to the rule that a mistrial may not be ordered without the defendant's consent "once jeopardy has attached" rely upon the authority and rationale of United States v. Perez, supra. There, 9 Wheat. at page 580, Justice Story said:

"We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faith-

A.L.R. 1436; McCarthy v. Zerbst, 10 Cir., 1936, 85 F.2d 640, 642, certiorari

denied 299 U.S. 610, 57 S.Ct. 313, 81 L. Ed. 450.

ful, sound and conscientious exercise of this discretion, rests, in this as in other cases, upon the responsibility of the judges, under their oaths of office."

Without in any way disagreeing with the result in the Perez case or with the results in the cases which have relied upon it, I submit that as a guide for determining when subsequent prosecution is to be barred by the former jeopardy clause of the Fifth Amendment, Justice Story's discussion in Perez is analytically inadequate. If the former jeopardy clause is to be taken seriously as a constitutional right of criminal defendants and if one accepts the principle that jeopardy attaches at the commencement of trial, it defies analysis to hold that this constitutional right can *always* be nullified by some discretionary act on the part of the judge at the first trial.[3] The inadequacy of such a "discretionary" rationale becomes peculiarly apparent in the present case. The majority opinion is at pains to demonstrate the propriety of the Assistant United States Attorney's conduct. They state that the Assistant United States Attorney did nothing to instigate a mistrial, that he merely performed his assigned duties "under trying conditions." The action of the district judge in ordering the mistrial, expressly characterized as "over-assiduous" and "over-zealous," is thus clearly regarded by my colleagues as having been a mistaken action. How then can it be said that the district judge did *not abuse* his discretion in ordering a mistrial? I cannot follow my colleagues on this issue; the result they reach is to me a *non sequitur*. However, my dissent is based upon other grounds, for I believe the question before us should be resolved without any reliance whatever upon amorphous principles of discretion.

Even if all other questions in the law of former jeopardy remain unsettled it is clear that in the one case where the trier of fact has fully considered the evidence against a defendant and the defendant has been acquitted that man may not thereafter be prosecuted for the same offense. United States v. Ball, 1896, 163 U.S. 662, 669–670, 16 S.Ct. 1192, 41 L.Ed. 300. As a corollary, a prosecuting attorney, sensing that the trier of fact will acquit if the case being tried is completed, may not enter a "nolle prosequi" during the trial without the bar of former jeopardy attaching. See Green v. United States, 1957, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199; Cornero v. United States, 9 Cir., 1931, 48 F.2d 69, 71, 74 A.L.R. 797; Ex parte Ulrich, D.C. W.D.Mo.1890, 42 F. 587, 595, reversed on other grounds, C.C.W.D.Mo.1890, 43 F. 661, appeal dismissed sub nom. Ulrich v. McGowan, 1893, 149 U.S. 789, 13 S.Ct. 1053, 37 L.Ed. 967; United States v. Shoemaker, C.C.D.Ill.1840, 27 Fed.Cas. page 1067, No. 16,279; and cf. Frankfurter, J., concurring, Brock v. State of North Carolina, 1953, 344 U.S. 424, 428–429, 73 S.Ct. 349, 97 L.Ed. 456. Therefore, what the prosecuting attorney is forbidden to do directly by nolle he ought not to be permitted to do indirectly by way of trial misconduct. I would hold that misconduct by a prosecuting attorney during trial may not deprive a defendant without his consent of the right to have that trial completed.

So far as I have been able to discover, of the cases permitting retrial subsequent to a mistrial that had been ordered after the initial trial had begun, in only two have the factors that produced the mistrial order been within the control of the prosecution. These two cases are Wade v. Hunter, 1949, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974, rehearing denied 337 U.S. 921, 69 S.Ct. 1152, 93 L.Ed. 1730, and Lovato v. State of New Mexico, 1916, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244, and neither case contradicts the conclu-

---

3. In Cornero v. United States, 9 Cir., 1931, 48 F.2d 69, 72, 74 A.L.R. 797, it was suggested that when the Perez opinion referred to the discretion of the trial judge it contemplated the discretion involved in determining how long the jury should be required to deliberate prior to its discharge for having failed to reach a verdict.

sion expressed in the preceding paragraph. Wade v. Hunter involved court martial proceedings initiated at the front during the invasion of Germany during the Second World War. There the Court, at pages 691–692 of 336 U.S., at pages 838–839 of 69 S.Ct., found "extraordinary reasons" justifying adjournment of the first trial. The circumstances of the Wade case would appear to objectively preclude any possibility that the adjournment ordered there resulted from a fear that the trier of fact would decide against the prosecution. Similarly, the abuse was objectively impossible under the facts in Lovato. There the identical jury which had been discharged so that the defendant could be arraigned prior to trial was reimpaneled to hear the case after the defendant's arraignment.

The references throughout this opinion to "misconduct" on the part of the Assistant United States Attorney should not be taken as indicating that, on this point, I am in accord with the District Judge and, with him, believe that the conduct of the Assistant United States Attorney was improper. I agree with my colleagues that the Assistant United States Attorney attempted conscientiously to present his case in a manner consistent with the rulings of the district judge. However, the significant fact is the district judge's belief. This erroneous belief deprived appellant of his right to take his case to the jury as the jury was then constituted. It is implicit in the former jeopardy clause that, as in criminal proceedings generally, the injurious consequences of erroneous rulings by the trial judge have to be borne by the prosecution rather than by the defendant.

Furthermore, although we reach contrary conclusions, I agree with my colleagues that the correct disposition of the issue before us does not depend upon whether the district judge was acting to protect the defendant or whether he was acting to punish imagined disobedience. If the former, I maintain that the district judge must give the defendant the right to decide whether his interest will be better protected by having a new trial or by proceeding with the present one. The defendant here was denied that choice; his retrial should not be permitted. If the latter, I think it equally clear that the maintenance of a court's authority and of a trial judge's control of a trial cannot be had at the expense of a defendant's constitutional rights.

I conclude that a district judge, acting *sua sponte,* does not have power to order a mistrial because of trial misconduct by the prosecuting attorney without giving rise to a sustainable plea of former jeopardy should retrial be attempted. Thus it becomes necessary to consider whether this appellant in some manner may be said to have consented to the mistrial order.

Although I find the court's opinion unclear on this point, it may be that my colleagues imply consent from two actions by appellant during the trial. My colleagues mention the fact that appellant made objections which might have led to the mistrial order, and they also mention that he did not protest the order itself.

As to the first ground, objections to testimony cannot be said to constitute consent to a subsequent mistrial order, for objections to testimony obviously assume that the trial is to continue. Moreover, as a matter of policy, I oppose a rule that would inhibit defense counsel from making objections during a trial lest, by objecting, counsel be found to have consented, in advance, to a mistrial order. Finally, I think the part the defendant's objections played in leading to the mistrial order in the present case has been overemphasized in the court's opinion.[4]

4. My colleagues refer to the defense's "continuous formal objections." This is misleading. At the morning session only did the defense interpose frequent objections. The first government witness, the shipper's traffic manager, was then testifying. Primarily these objections were directed to the admissibility of certain bills of lading. The district judge consistently overruled the defense, and

As to the contention that consent may be implied from appellant's failure to object to the mistrial order, similar contentions were made and rejected in Himmelfarb v. United States, 9 Cir., 1949, 175 F.2d 924, 931–932, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527; Ex parte Glenn, C.C.N.D.W.Va.1901, 111 F. 257, 259, reversed on other grounds 189 U.S. 506, 23 S.Ct. 851, 47 L.Ed. 921; United States v. Watson, D.C.S.D.N.Y. 1868, 28 Fed.Cas. page 499, No. 16,651. Under different circumstances than here present one court may have implied consent from a failure to object to a mistrial order. In Scott v. United States, 1952, 91 U.S.App.D.C. 232, 202 F.2d 354, certiorari denied 344 U.S. 879, 881, 73 S.Ct. 176, 97 L.Ed. 681, during the absence of the jury but in the presence of the defendant and his attorney, the trial judge stated he had decided to declare a mistrial. The jury was then called back into the courtroom and the order announced. During this time no objection was made. In the present case, however, the possibility of a mistrial had not been suggested until almost immediately before the district judge angrily ordered a juror discharged. The suddenness and vehemence of the order renders it highly unrealistic for us to imply consent here from appellant's failure to protest.

I would reverse with directions to dismiss the information.

### On Petition of Appellant for Rehearing.

### PER CURIAM.

On the merits of this appeal we find nothing to add to the discussions already

had. Appellant, however, objects to the procedure *in banc* followed here and claims a right of oral argument. This is a point we should discuss, since counsel generally should be apprised of our procedure so far as we have developed it. There is of course nothing secret as to our processes of advancing a case to the point of adjudication.

We have recently adopted our Rule 25(b) dealing with petitions for rehearing. This reads as follows:

"(b) *Disposition.* Any petition for rehearing shall be addressed to the court as constituted in the original hearing. It shall be disposed of by the court as so constituted unless a majority of said court or any active judge of this court, either from a suggestion by petitioner or *sua sponte,* shall be of the opinion that the case should be reheard in banc, in which event the Chief Judge shall cause that issue to be determined by the active judges of this court. Rehearing, whether by the court as constituted in the original hearing or in banc, shall be without oral argument and upon the papers then before the court, unless otherwise ordered." (Eff. April 25, 1960.)

But additionally the court reserves the right, as the statute, 28 U.S.C. § 46(c), provides, to proceed *in banc* whenever a majority of the active judges think such course in the interest of justice and so vote. This necessarily involves the exercise of discretion in each particular case and we have kept formal rules to a minimum. So when the procedure *in banc* has been voted, we have proceeded to de-

---

the frequency of the objections was caused in part from the district judge's admonition to the defense to preserve this point. The district judge did not display notable impatience with the conduct of the Assistant United States Attorney or rule favorably to the defense until the abbreviated testimony of the third and fourth government witnesses, the two FBI agents, who testified in the afternoon. The district judge's displeasure with the trial conduct of the As-

sistant United States Attorney during their examination, a displeasure that I join my colleagues in being unable to account for, was not instigated by defense counsel, whose role during this portion of the trial was entirely passive. The trial record discloses that neither counsel anticipated the course so suddenly taken and that the withdrawal of the juror must have been as much of a surprise to defense counsel as it was to the Assistant United States Attorney.

cision on only the original papers, Mc-Weeney v. New York, N. H. & H. R. Co., 2 Cir., 282 F.2d 34; Sperry Rand Corp. v. Bell Telephone Laboratories, 2 Cir., 272 F.2d 29; Mueller v. Rayon Consultants, 2 Cir., 271 F.2d 591; Reardon v. California Tanker Co., 2 Cir., 260 F.2d 369, 375, certiorari denied California Tanker Co. v. Reardon, 359 U.S. 926, 79 S.Ct. 609, 3 L.Ed.2d 628; F. & M. Schaefer Brewing Co. v. United States, 2 Cir., 236 F.2d 889, reversed United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed.2d 721, or on the mere filing of additional briefs, American-Foreign S.S. Corp. v. United States, 2 Cir., 265 F.2d 136, 144, vacated and remanded United States v. American-Foreign S.S. Corp., 80 S.Ct. 1336; In re Lake Tankers Corp., 2 Cir., 235 F.2d 783, affirmed Lake Tankers Corp. v. Henn, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246, or after full oral argument, Pugach v. Dollinger, 2 Cir., 277 F.2d 739, certiorari granted 80 S.Ct. 1614; United States v. Coppola, 2 Cir., 281 F.2d 340; United States ex rel. Marcial v. Fay, 2 Cir., 247 F.2d 662, certiorari denied Fay v. United States ex rel. Marcial, 355 U.S. 915, 78 S.Ct. 342, 2 L.Ed.2d 274; United States ex rel. Roosa v. Martin, 2 Cir., 247 F.2d 659; United States v. Apuzzo, 2 Cir., 245 F.2d 416, certiorari denied Apuzzo v. United States, 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43; and United States v. Santore, not yet decided. Thus we have no set rule in this regard, but are guided by what we conclude are the needs of a particular case.

■■ These various cases presented all the questions here adverted to, including the supersession of retired or visiting judges by a court comprised of only the active judges. As appears above, the Supreme Court passed upon many of the cases in their substantive aspects, but without raising any question as to the procedure. Petitioner has no absolute right to oral argument; where, as here appeared, the researches of the court and its staff had proceeded beyond that disclosed in the briefs of counsel, further briefs and oral argument would have been a barren formalism without advantage to the court and counsel and a waste of time for all concerned.

Petition denied.